## JAMES MYRES v. DAVID R. YAPLE.

*Replevin—Contract for conditional sale—Title retained by vendor as security—Rights of surety on payment of purchase price—Delivery of contract operates as an equitable assignment—Subrogating surety to rights of vendor thereunder—On demand and refusal, may bring replevin—Declaration need not aver the assignment—Ordinary form, sufficient—Equities of surety, superior to those of a subsequent vendee of the property with notice.*

Plaintiff signed a contract for the purchase of a buggy, *as surety* for the vendee, in which it was stipulated that the vendors should retain the title to the property as security for the purchase money. The vendors, with the vendee's consent, afterwards sold the buggy to the defendant for $50, receiving from him a like contract note, which sum they indorsed on the contract as part payment. They then demanded payment of the balance of the purchase price from plaintiff—the vendee having left the State—who, upon being threatened with suit, paid such balance, and the contract was delivered to him. Plaintiff then demanded the buggy, or payment of the money he had

been obliged to pay, from defendant, and upon his refusal replevied the property under the original contract of sale. At time of making such payment, plaintiff knew of the sale to defendant, but was not consulted concerning such transfer, and did not consent thereto.

*Held,* that by said payment an equity arose in favor of plaintiff, entitling him to all the securities held by the vendors against the vendee, with the right to enforce the same as fully as the vendors could have done.

*Held,* further, that such payment, and the delivery to him of the contract of purchase, operated as an equitable assignment of the vendors' rights and title thereunder, entitling him, under How. Stat. § 7344, to enforce such rights by suit in his own name.

*Held,* further, that it was not necessary to set out such assignment in the declaration, this being an action of replevin, and the ordinary declaration being sufficient.

*Held,* further, that the plaintiff's equities are superior to those of the defendant, being prior in point of time, and because the defendant can occupy no more favorable position than the original vendee, who was really defendant's vendor, from whom he purchased the buggy with full notice of plaintiff's position as surety, and the terms of the original contract.

Error to Oceana. (Russell, J.)    Argued February 10, 1886.    Decided April 8, 1886.

Replevin.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*L. G. Rutherford,* for appellant :

The action is *in rem,* and the contract note was offered in evidence for the purpose of showing that the title remained in the vendors.    This is competent :    *Ingersoll v. Barnes,* 47 Mich. 104.

On payment of the purchase price by plaintiff, who was only a surety, he was subrogated to the rights of the vendors :    *West Michigan Savings Bank v. Howard,* 52 Mich. 424.

Had the debt been secured by a promissory note signed by plaintiff as surety, it would have been his duty, on default of payment by the principal, as between him and the payee, to pay the note ; and he could then look to the principal for indemnity :    *Inkster v. Bank of Marshall,* 30 Mich. 147 ; here, by the terms of the contract the vendors retained the

title to the property sold, as security, and on payment plaintiff succeeded to their rights.

A parol assignment of an evidence of debt is sufficient under How. Stat. § 7344: *Nims v. Sherman*, 43 Mich. 50; *Draper v. Fletcher*, 26 Mich. 154; *Herbstreit v. Beckwith*, 35 Mich. 96; *Robinson v. Wilkinson*, 38 Mich. 300; and even after assignment the assignee can sue in his own name or that of the assignor: *Sisson v. Cleveland, etc., R. R. Co.*, 14 Mich. 496.

*James Brassington*, for defendant:

Hulbert, the original vendee, failed to pay according to contract, and delivered the buggy to his vendors, who, with his consent, sold the same to defendant, crediting its value, after deducting a fair compensation for its use and for wear and tear, on the contract of purchase: *Preston v. Whitney*, 23 Mich. 260; and they being bona fide holders of the buggy, defendant succeeded to all of their rights: *Kost v. Bender*, 25 Mich. 515.

If plaintiff took the note he claims to hold the property under, as a purchaser, it was with full notice of the rights of the holders and of defendant; and before giving his individual note in payment of the balance claimed to be due on the original contract, plaintiff was fully informed of defendant's purchase of the buggy, and the indorsement on the contract of the $50 he had paid therefor.

The addition of a seal to a note destroys its negotiability: *Rawson v. Davidson*, 49 Mich. 607.

While an assignee may sue in his own name under our statute, yet the assignment must be alleged in the declaration and proved on the trial to entitle him to recover: *Cilley v. Van Patten*, 58 Mich. 404.

Plaintiff's only remedy was to pay the note, as he did, and then sue his principal for the money paid: *McClatchie v. Durham*, 44 Mich. 435.

It is no error to refuse to submit a question of fact to a jury where there is a mere scintilla of evidence to establish it, and overwhelming counter evidence: *Hogan v. Cushing et al.*, 49 Wis. 169.

MORSE, J. The plaintiff brought replevin to recover possession of the buggy or carriage mentioned in the following contract:

"$90.                              HART, September 4, 1882.

" On or before the fourth day of May, 1883, I promise to pay to Bailey & Cahill ninety dollars, with interest at the rate of ten per cent. (payable monthly), ten dollars per month, (payable at Hart).

In case the above note is not paid at maturity at the place the same is made payable, then and in such case, for and in consideration of the trouble and expense said Bailey & Cahill are put to by reason of their being obliged to force collection thereof, and taking the necessary steps therefor, together with their disappointment so occasioned by my delay, I hereby agree to pay them the sum of ten dollars, as stipulated damages occasioned by such neglect, with interest thereon from the maturity of said note at the rate of ten per cent. per annum.   And it is further agreed that the title to the carriage of Scofield, for which this note is given, shall remain in said Bailey & Cahill until this note is fully paid.

"I. C. HULBERT.    [L. S.]
"J. C. MYRES."     [L. S.]

On appeal from justice's court the suit was tried in the circuit court for the county of Oceana, and a verdict directed for the defendant.   The plaintiff brings error.

The declaration was the ordinary one in actions of replevin; and the plea, general issue.   The defendant did not offer or introduce any evidence.

The plaintiff made substantially the following case.

He had no interest in the purchase of the property, but signed the note or agreement at the request and for the accommodation of Hulbert, and as his surety.   There was paid, previous to August 27, 1883, $15.50 upon the instrument.   On that day the holders of the note, Bailey & Cahill, who were copartners, sold the carriage, with the consent of Hulbert, to defendant, Yaple, for $50, taking a note in payment of him, of the same form as the one given by Hulbert and Myres.   They indorsed the $50 as a payment of that sum upon the first note or agreement, and then called upon plaintiff for the payment of the balance.   They put it in the hands of attorneys, who threatened to sue it, whereupon plaintiff paid it, and the note was delivered to him.   At the date of this payment, Hulbert had left the State.   After get-

ting possession of the note, plaintiff went to Yaple, the defendant, and demanded the carriage, or payment of the amount he had paid to take up the note.

Yaple is financially irresponsible.

Plaintiff never consented to the transfer of the buggy to defendant, nor was he consulted in any way about it. He knew the buggy was sold to Yaple before he paid the balance upon the note, but was not informed of the manner or terms of the sale. He paid this balance upon the obligation he signed, by giving his individual note for the same. The plaintiff also put the defendant upon the stand, who testified as follows :

"I am the defendant. I am acquainted with the plaintiff; also Bailey & Cahill. I know I. C. Hulbert. Hulbert wanted to sell me this buggy. I would not buy it of him, because I knew what kind of a note he had given. I had given one like it to Bailey & Cahill before, when I bought my platform wagon. I told him I would give fifty dollars for the buggy if he would deliver it to Bailey & Cahill, so I could buy it of them. The plaintiff did not know of the sale to me at the time it was made. I sent my boy to see them (Bailey & Cahill), and he brought it ; and when I came to town I gave a note like this one (the note in evidence) in form for fifty dollars, and they indorsed it on this note (the one in evidence). This indorsement for $50 is for the note I gave them at that time. I knew about this note when I bought the buggy. That is why I would not buy it of Hulbert. I did not say anything to Myres about it, or consult him in any way until I had bought."

Plaintiff also introduced the note or agreement in evidence. There was no showing that plaintiff had paid the note he gave to Bailey & Cahill.

The counsel for plaintiff claims that, by virtue of the payment of the balance upon this note or agreement, and by its delivery to him upon such payment, he acquired the same title to the property that Bailey & Cahill had under it, and bases his right to recover upon that theory.

The defendant's counsel insist that plaintiff got no title to the property by this transaction, and that the note was delivered to him as evidence of payment only, and conferred upon

him no right, except to sue and recover from the maker, Hulbert, the money he had paid upon it. The record is silent as to the intent or purpose of Bailey & Cahill in delivering this note to plaintiff.

Before the payment of the balance of this note or contract by the plaintiff, we have the ordinary case of a creditor (Bailey & Cahill) holding security for the payment of the debt of the principal debtor (Hulbert), to wit: the contract retaining title to the buggy, and also the further security of Myres as surety.

Now, as between Bailey & Cahill and Myres, when the plaintiff, as such surety, was obliged to pay, and did pay, the debt of the principal, an equity arose in his favor, by which he was entitled to have all the securities which Bailey & Cahill held against the person or property of Hulbert transferred to him, and to enforce such securities as fully as Bailey & Cahill could have done; and, for the purpose of obtaining indemnity from the principal, he must be considered as at once subrogated to all the rights, remedies, and securities of the original creditors.[1]

When the plaintiff paid the balance due upon the contract, Hulbert had absconded, besides being insolvent and financially worthless.

It appears plainly enough from the record that, in making the payment, the plaintiff did not intend that the contract or obligation signed by himself and Hulbert should be discharged by such payment; but he did it relying upon the legal efficacy of the contract as evidence of title in the vendors, and as passing such title to him by an equitable assignment, on payment of the balance due thereon; and he proceeded at once to reclaim the property under and by virtue of the instrument.

He had a right, by virtue of this equitable assignment, under our statute in relation to assignments of choses in action, to bring this suit to enforce his rights in his own

---

[1] For a resumé of important Michigan decisions relating to the doctrine of subrogation, see note to case of *Bush v. Wadsworth et al.*, 60 Mich. 255.

name: How. Stat. § 7344. The action brought being replevin, it was not necessary for him to set out such assignment in his declaration, as claimed by defendant's counsel. His declaration, being in the ordinary form in such action, was sufficient.

When Hulbert consented that the possession and contingent title to the buggy might pass to the defendant, instead of to himself, and it was delivered to defendant, Yaple knew of the existence of the original contract, and the shape it was in, and that Myres was surety upon it. Bailey & Cahill did not cancel this original undertaking and contract as to the title or security. No change whatever was made in it, except the indorsement of the $50 upon it. The title remained in Bailey & Cahill, and was in them at the time Myres paid the balance upon the contract.

Upon the payment of such balance the plaintiff became entitled to, and received, the security held by Bailey & Cahill, which was the legal title to the possession of the buggy. In default of payment of the balance he paid, and which he demanded before suit of the defendant, he was entitled to the possession of the buggy.

The plaintiff's equities are superior to the defendant's because they are prior in time, and also because the defendant can occupy no more favorable position than Hulbert, who was really his vendor; and he had full notice of Myres' position as surety, and the terms of the contract, when he gave his note for the buggy. As he is also insolvent, and has paid no money, there will be no great hardship in his relinquishing the buggy, if he cannot pay plaintiff's just lien upon the property.

The judgment of the court below is reversed, with costs, and a new trial granted.

The other Justices concurred.