WAIKAPU SUGAR CO. *vs.* HAWAIIAN COMMERCIAL AND SUGAR CO.

APPEAL FROM ORDER OF JUDD, C.J.

HEARING, DECEMBER 23, 1891.   DECISION, JULY 1, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

A president of a corporation is not authorized, *virtute officii*, to bring suits in the name of a corporation. He must have authority from the corporation to do so, in order to bind the corporation.

A by-law of a corporation, that its president, " subject to the advice and control of three-fourths of the shares represented at any meeting shall have general superintendance of the affairs of the company," is not sufficient authorization to him to commence a suit at law, without the approval of the stockholders or proof of their acquiescence or ratification of his act.

DECISION OF JUDD, C.J., APPEALED FROM.

The plaintiff is a corporation, incorporated and existing under the laws of the Hawaiian Islands. The defendant is a corporation, incorporated and existing under the laws of the State of California, United States of America, carrying on business in this Kingdom. The complaint avers that the defendant has unjustly, etc., taken into its exclusive use and occupation certain portions of the lands of Waikapu and Pulehunui, on Maui, describing them by metes and bounds, to which lands the plaintiff and defendant are equally entitled in fee by purchase as tenants in common, and from which the defendant has, during the period of six years now last past, excluded the plaintiff, having fenced in and cultivated and planted the same, and during all said period taken to its exclusive use all the rents, issues and profits thereof, and although often requested, has during all of said period refused to allow the plaintiff to use, occupy or enjoy said portions or any part thereof, or to obtain any benefit or ad-

vantage therefrom, or to join with the plaintiff in making any partition thereof, whereby and by reason whereof the plaintiff has been deprived of and prevented from exercising its right to use, occupy or enjoy or obtain rents or profits from said portions, according to the plaintiff's title as aforesaid, to the damage of said plaintiff one million dollars. The complaint is signed "The Waikapu Sugar Co., by W. H. Cornwell, President."

The defendant filed the following plea in abatement:

"And now comes said defendant, appearing specially for the purpose of making this plea, and says that the above action was begun and is now pending without authority of the plaintiff corporation, and this it is ready to verify." The defendant also filed a plea of general issue, not waiving its plea in abatement, and a disclaimer of title to one undivided half of all the tracts of lands set forth by notes of survey in the plaintiff's complaint, said land containing an area of 15,000 acres, more or less, in all, and admits the title to be as claimed in the plaintiff's complaint, to wit, one-half in the plaintiff and one-half in the defendant.

On the 22d July the hearing on the plea in abatement was had before me. Mr. Hatch, for the plaintiff, offered in support of his plea affidavit of W. M. Giffard, that he is the secretary of the plaintiff company and has charge of its record; that no meeting of the company has ever been held to authorize an action of ejectment against the Hawaiian Commercial and Sugar Company; that the by-laws of plaintiff company do not authorize the president to take such action; and that a true copy of the by-laws of said company is annexed to his affidavit. Mr. G. W. Macfarlane testified on behalf of the plaintiff company, that W. H. Cornwell is president; G. W. Macfarlane, vice-president; W. G. Irwin, treasurer; W. M. Giffard, secretary; and F. W. Macfarlane, auditor of the plaintiff company; that this action was brought by the consent of the president, vice-president and auditor; that the treasurer is absent from the Kingdom, and that the secretary is also secretary of the defendant company; that there are only two shareholders of the plaintiff company's stock, viz., G. W. Macfarlane, 1250 shares, and Claus Spreckels,

1250 shares, and that he believes that Spreckels has transferred his shares to the defendant company.

The by-laws provide that the officers of the Waikapu Sugar Company shall be president, vice-president, secretary, treasurer and auditor. "And with the exception of the treasurer and auditor they shall be stockholders." There is no board of directors created by the charter or by-laws. The second by-law prescribes the duties of the president. He is to sign all written instruments of the company which shall first have been approved by the holders of not less than three-fourths of the shares, etc. "He shall have the casting vote at all meetings of the stockholders, and, subject to the advice and control of three-fourths of the shares represented at any meeting, shall have the general superintendence of the affairs of the company."

Mr. Hatch, for the defendant, contends that as the by-laws do not provide for a board of directors who shall manage the affairs of the plaintiff company, and as the by-laws do not confer any power upon the president, except the general superintendence of its affairs, which means the power to transact its ordinary business, the authority to bring an action like the one at bar requires the approval of a majority if not of three-fourths of the stockholders.

Mr. Hartwell (Thurston & Frear and C. L. Carter with him) contends that the president of the plaintiff corporation, unless restricted by the by-laws or a controlling vote of the stockholders, is the only one authorized to institute this suit. The charter authorizes the corporation " to appoint such officers and agents as the business of the company may from time to time require."

Neither the charter nor the by-laws confer the corporate powers upon the directors. Has then the president, as the agent of the corporation, a right to institute a suit such as the present, without obtaining a vote to this effect from the shareholders, under the by-laws, giving him the " general superintendence of the affairs of the company?"

In *Ashuelot Manufacturing Co. vs. Marsh*, 1 Cush., 507 (1848), it was held that the president of a manufacturing company has

no authority as such to commence an action in the name of the corporation. The corporation consisted of three persons, the president, the treasurer and agent, and the clerk of the corporation. The action was begun at the instance of the president, and the corporation did not authorize the action. This decision announces the conclusion of the Court dismissing the action, but does not give any reason, and it is suggested by counsel for plaintiff that the suit may have been dismissed because the statutes of Massachusetts required that there should be directors as well as a president and other officers in all corporations. But this learned Court had held in 1822 that an agent of an incorporated company, duly appointed by the corporation, had no authority to bind the corporation by a promissory note without express authority from the corporation. *White vs. Westport C. M. Company*, 1 Pick., 220. The reasoning of the Court in this case is that the giving of this note did not relate to the business of the company and was not within the agent's general authority as its agent.

In *Markey vs. Insurance Co.*, 103 Mass., 93, the Court say: "It does not follow from the fact that a man is shown to be agent for another, or for a corporation, that his principal is bound by all that he does. There are limitations that grow out of the very law of agency. * * * In the case of corporations created for a special purpose or engaged in a special business, the authority of the agent will be presumed to be limited by the nature of that purpose or business."

In *Globe Works vs. Wright*, 106 Mass., 215, it was shown as a part of a case that an action of replevin was served upon one Souther, who was president of the plaintiff corporation. The Court say: "These plaintiffs were not a party to that action. The fact that Souther was president and general agent of the corporation was not conclusive evidence that he was authorized to bind the corporation in this respect."

Following these precedents the Massachusetts Court, per Gray, J., said in *Mahone vs. R. R. Co.*, 141 Mass., 75: "When, as in this case, the petitioner for removal (of the case from the State to the Federal Court) is a corporation, the petition may

doubtless be signed and the affidavit made by some person authorized to represent the corporation.    But the authority of any person assuming to represent it must appear.    No officer of a corporation, unless specially authorized, has power to bind the corporation, except in the discharge of his ordinary duties. * * There can be no doubt that it is no part of the ordinary duty of the superintendent of a railroad to represent the corporation in any judicial proceedings."

In the case, *Bank of the United States vs. Dunn*, 6 Peters, 51, the Supreme Court of the United States would not permit the president and cashier of the bank to bind it by their agreement with the endorser of a promissory note, that he should not be liable on his endorsement.

This was followed by *U. S. vs. Bank of Columbus*, 21 Howard, 356, where it was held that the action of a cashier of a bank, in authorizing a person to contract with the United States Treasury for the transfer of $100,000 from New York to New Orleans, was not within the scope of the powers of a cashier, and, not not being authorized by the directors, the bank was not bound to reimburse the Treasury of the United States.    Both the Massachusetts Supreme Court and the Supreme Court of the United States, in these decisions, refer to *Hoyt vs. Thompson*, 1 Selden, 320, with approbation.    The head note, which well expresses the principle of the case, is as follows:  "Where the management of the affairs of a corporation is entrusted by its charter to a board of directors, the president and cashier, unless specially authorized by the charter, have no power to assign the choses in action of the corporation to its creditor as security for the payment of a precedent debt of the corporation, without authority from the board of directors."    The charter in this case provided that the business of the company should be managed by fifteen directors.

In *Leggett vs. N. J. Manufacturing Co.*, 1 N. J. Eq., 541, a mortgage of real estate was signed by the president and cashier of a bank and the corporate seal affixed; but the mortgage was not authorized by the directors.    The Court say, in reply to the contention that the president and cashier, being the recog-

nized agents of the corporation and having the custody of the seal, their acts should bind the corporation; "that corporations, like natural persons, are bound only by the acts of their agents when made within the scope of their authority, and the Court held that, as officers, they had no general authority, *ex officio*, to mortgage real estate. And as they receive no special authority from the directors the mortgage was held invalid, there being no evidence of assent or ratification on the part of the directors."

*Gillis vs. Bailey*, 17 N. H., 18, is authority for the position that a general agent of a corporation, in charge of its lands, buildings, etc., cannot make a lease for the purpose of trying the title to land into which he has entered for condition broken, the vote of the corporation authorizing him to enter and hold the land but not to make a lease.

I think it is well sustained law that "in the absence of any provision to the contrary contained in the charter of a corporation, it will be presumed that its president, secretary and treasurer have the authority to make all necessary contracts in transacting the ordinary business of the corporation within the legitimate scope, object and purposes of its organization." *Eureka Iron Works vs. Breshnahan*, 60 Mich., 339. In this case, however, the mortgage to be executed was agreed to by all the directors and stockholders of the company, and the mortgage drafted and executed in their presence, although no formal action or record of any action taken appears on the records of the company.

So, also, it is clear that "the ordinary affairs of a corporation, such as custom has imposed upon or necessity requires of the president of a corporation, may be performed by him without express authority." *R. R. vs. Coleman*, 18 Ill., 298, cited by plaintiff's counsel.

I now come to cases cited by plaintiff's counsel in support of the proposition that the president can bring this suit without further authority. *Kenton Furnace Co. vs. McAlpin*, 5 Fed. Rep., 741, is cited. Judge Swing of Southern District of Ohio charged the jury that "the action is brought by the corporation

for its own benefit against these defendants; the action relates to the business of the corporation solely. The defendant has filed in the case a plea or an answer in the nature of the general issue. He therefore waived all proofs of the due organization of the company, and he also waived all question as to the right of the plaintiff to maintain the action. He cannot now call upon the plaintiff to furnish proof that it was authorized to bring the action. * * * A corporation has a right to sue, in all cases which relate to its business, without any resolution of the board of directors authorizing it to sue."

The case before me differs entirely from the above, in that here the special plea in abatement was made together with the general issue, and the special plea is not thereby prejudiced.

*American Insurance Co. vs. Oakley,* 9 Paige, 496, (1842) is relied on by plaintiff's counsel. Here Chancellor Walworth held that "when the president of a corporation authorizes an attorney or solicitor to prosecute or defend a suit, or to commence any legal proceeding in which the corporation is interested, the attorney or solicitor will be authorized to appear for the corporation, and such corporation will be bound by his acts as their attorney or solicitor. And if the president exceed his authority in retaining such attorney or solicitor, the corporation must look to him for any damages sustained in consequence of such authorized act." This was an application to set aside an order upon appeal, on the ground that the original application for the resale and the appeal had been made in the name of the corporation without its authority or assent.

But the case loses its significance when we read that the Chancellor says: "The acts and assent of corporations, like those of individuals, when not reduced to writing may be inferred from other facts and circumstances without a violation of any known rule of evidence. I am also satisfied in this case that the directors, as well as the president of the bank, must have been aware of the fact that an application for a resale was to be made, or had been made, long before there was any attempt to repudiate the authority of the agent who had employed Mr. Sears to conduct the proceedings."

In *Hoyt vs. Thompson*, decided nine years later than the case from 9 Paige, the Court say, the "president, cashier, and other executive agents of a corporation are sometimes permitted by the directors, without express authority, to do acts not within the sphere of their official duties or agencies, and are thus held out to the public as having authority to do such acts. In such case the corporation will be bound by the acts of its agents on the ground of implied authority."

The question before me is not of the character raised in the case from 9 Paige, nor is there as yet any evidence which may be construed as an assent on the part of the plaintiff corporation to the suit.

I am quite satisfied with the law as found in 1 Waterman on the Law of Corporations, section 126. "Beyond the powers which usage and custom and the necessities and convenience of business require in the executive officer of a corporation, the president has no more control over the corporate property and funds than any other director." "He may, however, without any special authority from the board of directors, perform all acts of an ordinary nature which are incident to his office, and may bind the corporation by contracts arising in the usual course of business."

But this presumption in favor of authority may always be repelled by evidence.

I restate the question. The charter of the plaintiff corporation does not confer the management of the corporate powers to a board of directors. By its second by-law the president "subject to the advice and control of three-fourths of the shares represented at any meeting, shall have the general superintendence of the affairs of the company." I construe this to mean that all the ordinary business of the corporation, which is within the legitimate scope, object and purpose of its organization, may be done by the president without showing any special authority therefor from the stockholders. But a vote of three-fourths of the shareholders may compel the president to act in a particular way or veto any contemplated action of his.

The object of this corporation, as expressed in its charter, is "the carrying on the cultivation of sugar cane and the manufacture of the same into sugar." The corporation has the express power to "carry on the cultivation of sugar cane and the manufacture of sugar; to hold real estate and other property; to erect and maintain mills, boiling houses, railroads and all other machinery and appliances which may be deemed necessary, and to do and perform all such other acts as may be necessary fully to carry into effect said purposes."

I should say that ordinary suits to enforce contracts for labor, to be performed on the plaintiff corporation's plantation, could be instituted without special authority from the shareholders, in fact, any suit legitimate and necessary to the conduct of the plantation. But to bring a suit of the character of the one at bar, involving a large outlay of money, is not within the general authority of the president, because it is not within his powers of "general superintendence of the affairs of the company." He should have the vote of the shareholders to authorize it.

It may be that this decision, if sustained, will produce the result that no suit of this character will be brought, since the acquiescence of the holder of one-half of the stock, which is the defendant corporation, cannot be obtained. This may be so, and it only emphasizes the justice of the rule I have laid down, that acquiescence on the part of the stockholders is essential in this important matter. If I should overrule the plea and allow the action to proceed, the plaintiff corporation would be putting half of its shareholders to expense and trouble, presumably against their consent. The holder of the other half of the stock would have his remedy in equity, where the action would be upon his own responsibility and at his own cost.

I therefore sustain the plea.

### OPINION OF THE FULL COURT, BY DOLE, J.

The authorities cited in the decision appealed from are, in our opinion, decisive of the position that the president of a corporation cannot by virtue of his office and without authority from the corporation begin a suit in the name of the corporation.

See also *Wait vs. Nashua Armory*, in the Central Law Journal, volume 34, number 6.

The authority to bring this suit is rested by the plaintiff's counsel upon the by-law quoted in the above opinion (by-law 2) which gives the president the "general superintendence of the affairs of the company." It is to be noticed that the first part of the by-law gives specifically the power to the president to sign all certificates of stock, contracts, deeds, mortgages, leases, promissory notes, bills of exchange and other written instruments of the company, which shall first have been approved by the holders of not less than three-fourths of the shares present in person or represented by proxy at any meeting. By-law 8 provides that no meeting of the stockholders shall be qualified to act unless two-thirds of the shares shall be represented. Thus, in order to enable the president to do any of the specific acts enumerated in by-law 2, he must have the approval of the holders of at least three-fourths of two-thirds of the stock. The latter part of by-law 2, reading that he (the president)  *  * " subject to the advice and control of three-fourths of the shares represented at any meeting, shall have the general superintendence of the affairs of the company," means that the superintendence of the affairs of the company by the president must be with the approval of the same proportion of stockholders, *i.e.*, three-fourths of two-thirds of the whole number.

Acquiescence by the stockholders in any act of the president's general superintendence may be shown by any competent proof, and we assume that the ordinary business of the corporation, being within the legitimate scope, object and purpose of its organization, of which the stockholders may be presumed to be aware, may be transacted by the president without a prior formal vote of approval by the shareholders. But the above proportion of shareholders can compel the president to act in any particular way or veto any action of his. So far from any acquiescence by the shareholders in the bringing of this suit being shown, the evidence in support of the plea in abatement is conclusive that it was not authorized by them. The express authority to bring this suit not being given by the shareholders,

and we holding that the president cannot *ex officio* bring the suit, does by-law 2 confer the authority? Does the term "general superintendence" confer upon the president the power to bind the corporation by a suit? The charter and by-laws of this corporation are so peculiar, especially in not providing for directors, that we find no precedents in the decided cases of other courts to guide us. We are therefore free to decide this case upon principle. The first part of by-law 2 having so explicitly curtailed the power of the president in signing written contracts, making the approval of the shareholders a prerequisite, it is a fair inference that it was intended that the president should not do an act of so important a nature as the commencing of a suit without a similar authorization. We see no difficulty in regard to the suggestion that this decision would necessitate the president obtaining specific authority from the shareholders in every instance when a suit was brought against a contract laborer. A by-law could easily be made conferring general authority to bring suits of this nature upon the president, the manager or other officer of the corporation.

We therefore affirm the decision appealed from and sustain the plea in abatement.

*A. S. Hartwell, Thurston & Frear* and *C. L. Carter,* for plaintiff.

*F. M. Hatch,* for defendant.