# STANDARD STEAM LAUNDRY, APPELLANT *v.* C. A. DOLE, RESPONDENT.

ACTION TO REDEEM FROM MORTGAGE SALE—UNDER SECTION 3267, R. S., 1898—SPECIAL PROCEEDING — WHEN COURT MAY ADJUDICATE ALL MATTERS IN CONTROVERSY — CONDITIONAL SALE OF PERSONALTY — VALID IN UTAH — ASSIGNMENT BY VENDOR — OF HIS CLAIM FOR LIEN ON PERSONALTY — SUBSEQUENT CONTRACT —TAKEN BY VENDOR IN CONDITIONAL SALE — ADDITIONAL SECURITY—NOT WAIVER OF LIEN.

*Action to Redeem from Mortgage Sale — Under Sec. 3267, R. S., 1898—Special Proceeding—When Court May Adjudicate All Matters in Controversy.*

Although a judgment debtor, or his successor in interest, may institute a special proceeding, under Sec. 3267, R. S., 1898, to redeem real estate sold under a mortgage, and to compel an accounting of the rents and profits of such estate, and have the right to insist that the trial be limited to the special purpose for which the suit was brought yet if he seeks by his complaint for an accounting of the rents, issues and profits of personal property not sold with the realty, and prays for general relief, the defendant has a right to file his counterclaim which grew out of transactions relating to the same property, and plaintiff cannot be heard to complain if all issues thus before it, are heard and determined by the trial court.

*Conditional Sale of Personalty—Valid in Utah.*

A conditional sale of personal property, it being stipulated in good faith that the title is not to pass until full payment of the purchase price by the vendee, is valid and binds the vendee, his creditors and vendees.[1]

---

[1] *Lippincott* v. *Rich*, 19 Utah, 140; *Hirsch* v. *Steele*, 10 Utah, 19; *Russell* v. *Harkness*, 4 Utah, 197; *Harkness* v. *Russell*, 118 U. S. 663.

*Assignment by Vendor—Of his Claim for Lien on Personalty.*

> A vendor of personal property may assign his claim to such property sold conditionally, and his assignee acquires the same rights therein as the vendor had, and the vendor loses all interest in the property.

*Subsequent Contract—Taken by Vendor in Conditional Sale—Additional Security—Not Waiver of Lien.*

> The taking, by a vendor in a conditional sale, of a subsequent contract from the vendees and another, which contract amounts simply to additional security, is not a waiver of the rights of the vendor under the contract of sale and does not destroy those rights or the vendor's lien.

( Decided July 21, 1900.)

Appeal from the Third District Court Salt Lake County. Hon. Ogden Hiles, *Judge.*

Action for accounting. Defendant filed an answer admitting, denying and setting up a counterclaim and prayed for an accounting, and that he be decreed a lien upon the property of plaintiff. Plaintiff filed a replication denying affirmative matter in the answer and pleading payment. From a decree allowing the defendant a lien and giving the plaintiff the right to redeem the property on payment of the amount of the lien plaintiff appealed. *Affirmed.*

*N. V. Jones, Esq.,* for appellant.

The contention of appellant is:

That this is a special proceeding under the statute (sections 3260 to 3267 and 3503) to redeem plaintiff's real estate from mortgage sale, and that the rights conferred and the duties imposed are limited by the statute and the only conditions or burdens applicable in the case. *Sharp v. Miller,* 47 Cal. 82; *Warren v. Fish,* 7 Minn. 432; *Park v. Hush,* 29 Minn. 434.

The following authorities hold that the introduction of new parties, new terms or alteration made in a contract, operates as a rescission of the old contract, thereby extinguishing the original contract. And it does not matter whether the new contract is performed or not: Anson on Contracts, 11, Am. Ed., pages 341 to 346, and cases cited; Parsons on Contracts, Vol. 1, page 231, Sixth Ed.; *Morris* v. *Harvey*, 75 Va. 726; *Livingston* v. *Radcliff*, 6 Barb. 201; *Millard* v. *Thorne*, 56 N. Y. 402.

The following authorities hold that by taking other securities than the obligation of the vendee, for the purchase price, the vendor thereby waives his right to a lien. Jones on liens, Sec. 1086; *Detrich* v. *Folk*, 40 Ohio St. 635; *Hazeltine* v. *Moore*, 21 Hun., N. Y. 355; *Richards* v. *McPherson*, 74 Ind. 158; *Mattix* v. *Weand*, 19 Ind. 151; Jones on Liens, Sec. 1089, Vol. 11.

*Messrs. King, Burton & King.*

The doctrine is now well settled in this and nearly every state and territory where the subject has been considered, that a *conditional sale of personal property* by which the title is not to pass until full payment by the conditional vendee is good against him and his creditors and vendees. *Russell* v. *Harkness*, 4 Utah, 197; Same, 118 U. S. 663; *Hirsch & Co.* v. *Steele*, 10 Utah, 19; *Rodgers* v. *Backman*, 109 Cal. 552; American and English Encl. Law, Vol. 6, page 485.

## STATEMENT OF FACTS.

The plaintiff filed a complaint for a general accounting and equitable relief asking that the defendant be compelled to account for certain rents, issues and profits of certain real and personal property employed in conducting

a laundry business, and that the amount found due be credited as redemption money to be paid to redeem the real estate from foreclosure sale under a mortgage.

In the answer certain things of the complaint were admitted, others denied, and a counterclaim set up, in which it was averred that the defendant by purchase and assignment, was the owner and holder of certain notes executed and delivered to the Troy Laundry Machinery Co. Limited, by O. A. and E. T. Wooley for the purchase price of the laundry machinery described in the complaint; that the notes provided that the title to the machinery was not to pass until they were paid in full; that to prevent the taking of the laundry machinery the defendant was compelled to purchase them and pay the balance due on them, neither the plaintiff nor the makers having paid them; and that he also paid certain taxes and expenditures for repairs on the property. The prayer was that an accounting be had, and that the defendant be decreed a lien on the machinery for the amount paid by him on the notes and on the real estate for the taxas and expenditures paid by him, and that in case the court decreed a redemption of the real estate, the plaintiff be ordered to pay the several sums covered by such lien, in addition to the amount paid by the defendant for the real property under the foreclosure sale.

The plaintiff in its replication denied these averments of the answer, alleged that the notes were paid under a certain agreement of defendant, and concluded, as follows:

"Wherefore, plaintiff prays, that it be decreed to be the owner of the property specified in paragraph nine of plaintiff's complaint, free from all incumbrances and liens held by defendant, of whatever nature, that the plaintiff have and recover from the defendant, the rents, issues and profits received for the reasonable use and occupation of

said property specified in plaintiff's complaint, both real and personal, that the same be credited upon the redemption money to be paid said defendant, and for such other and further relief as the court shall deem just and equitable in the premises, and for costs of this action."

Under these pleadings it was shown, as appears, that the plaintiff was organized as a corporation in 1893, under the laws of Utah, with a capital stock of 12,000 shares, of which shares Oscar F. Hunter owned 600, and Orson A. Wooley and Alice, his wife, and George E. Wooley owned 600. Certain real estate and laundry machinery, in question herein, was conveyed to the corporation in full payment of the capital stock of the incorporation.

At the time of the conveyance the real estate was incumbered with a mortgage, which had been executed to one Mulvey by Orson A. and Alice Wooley, to secure the payment of $2,500 and interest. The laundry machinery had been purchased from the Troy Laundry Machinery Co., Limited, by O. A. and E. T. Wooley, conditionally, as provided in five notes, executed by the vendees to the vendor, each of which notes contained the agreement "that the title or ownership of said machinery does not pass from the Troy Laundry Machinery Company, Limited, until the notes shall have been paid in full." There remained due on these notes the sum of $1,500 principal, on April 17, 1894, when the defendant purchased the stock owned by Oscar F. Hunter. This purchase was evidenced by a contract in writing between the defendant and Hunter, wherein it appears that the consideration for the transfer of the stock was the conveyance of certain real estate, situate in Salt Lake City, by Dole to Hunter, and the performance of certain agreements, contained in the contract, one of which was a covenant that Dole should pay for Hunter the notes given

by Wooley to the Troy Laundry Machinery Co., "when the said Wooley causes the real property of said corporation," which was covered by the mortgage above mentioned "to be released from the lien of the mortgage," such debt "being the individual debt of Orson A. Wooley," and not of the corporation.

At the time of the purchase of the stock from Hunter, Dole, O. A. and E. T. Wooley entered into a contract with the Troy Laundry Machinery Co. for the purpose of procuring an extension of time for the payment of the balance due on the notes, in which contract, Dole "for himself assures and guarantees the payment" of such balance, which was $1,500, and O. A. and E. T. Wooley also "jointly guarantee the payment thereof." The last clause of the contract reads: "The said parties of the second part agree that when the property of the Standard Steam Laundry Company is released from all incumbrances that the said C. A. Dole shall deposit with Wells, Fargo and Company, to secure the balance due to the said party of the second part, one-half of the capital stock of the said Steam Laundry Company. On the deposit of the said stock, the party of the second part will and does hereby release the said O. A. Wooley and E. T. Wooley from the payment of the said notes."

Afterwards Dole paid the amount due on the notes to the payee to protect Hunter and the laundry machinery against the vendor's lien, had them assigned to himself, and became the owner and holder of them. No part of the amount of the notes has been paid by the Wooleys. There was no consideration for the assumption of Dole to pay the notes. Dole also paid certain sums for repairs and taxes on the property. Soon after the purchase of the 600 shares of stock from Hunter, about July, 1894, Dole leased of the Wooleys their undivided one-half inter-

est in the laundry, including premises, building and machinery at a weekly rental of $7.50, and in addition thereto, agreed to do the washing for the families of the lessors. The property has ever since been in the possession of the lessee, and the rent was paid to the lessors and accepted by them until one week after the sale of the premises, under foreclosure of the Mulvey mortgage, which sale occurred on February 27, 1898, the mortgage not having been paid. The lease was to continue until terminated by notice. The lessee became the purchaser at the mortgage sale, and has continued in the possession of the premises to the present time, and has always been ready and willing to pay the rent, but since a week after the sale the lessors have refused to accept the same.

The lessors made demand in writing, before the bringing of suit, upon the lessee, for an accounting for the use and occupation of the real estate, and for the use of the building and laundry machinery, but the lessee failed and refused to make the same. Thereupon this action was instituted to compel such accounting and to redeem the property. At the trial the court entered a decree allowing the defendant a lien on the laundry machinery for the amount of the notes paid by him, and on the real estate for the certain sums paid by him for taxes and repairs, and for a certain sum, with interest, paid by him as purchase money for the premises under the foreclosure sale, and held that the plaintiff was entitled to redeem the property upon payment of such several sums, aggregating $4,230.50, less the rental of the premises, at the rate of $64 per month from February 28, 1898, to January 5, 1900. The plaintiff thereupon appealed from the decree and judgment.

A statement of the case as above having been made, BARTCH, C. J., delivered the opinion of the court.

The first question to be determined is whether this is a special action under the statute to redeem real estate after foreclosure sale or a general equitable action to determine all matters in controversy between the parties.

The appellant contends that it is a special statutory proceeding to redeem its real estate from the mortgage sale, and that the only burdens which can be imposed upon the judgment debtor, or his successor in interest, as a condition precedent to his right to redeem, are the repayment to the purchaser of the amount of the purchase price with interest, and any tax or assessment, paid after the purchase, with interest thereon.

This contention is warranted neither by the pleadings nor by the theory upon which the case was tried. Undoubtedly a judgment debtor, or his successor in interest, may institute a special proceeding, as provided in Section 3267, R. S., to redeem real estate sold under a mortgage, and to compel an accounting of the rents and profits of such real estate, and if this be done the plaintiff has the right to insist that the trial be limited to the special, purpose for which the suit was brought. In this case, however, the complainant did not see fit to confine his complaint to the terms of the statute by alleging a cause of action for the redemption of real estate sold under the mortgage, and an accounting for the rents and profits thereof, but it went further and set up a cause, and made a demand for an accounting for rents, issues and profits of personal property not sold with the real estate, and also asked for general relief. Having thus brought a suit to determine the whole controversy between the parties, the defendant had the right to file his counter-claim which grew out of transactions relating to the same property. This right the plaintiff must have recognized, for, it seems, it made no attempt to strike out the counter-

claim, but instead filed a replication admitting some things, denying others, and making a similar demand to that in the complaint, and then without objection, as appears, permitted the cause to be tried upon the theory that all matters in controversy, between the parties, relating to the laundry business, should be determined. It was therefore proper for the court to decide all the issues raised in the pleadings and tried before it, and the appellant is in no position to complain that burdens were thus imposed upon it, in its efforts to redeem its property, which were not contemplated by the statute.

Nor, under these pleadings, did the court err in admitting the notes of O. A. and E. T. Wooley given to the Troy Laundry Machinery Co., Limited, for the purchase price of the laundry machinery, in evidence. Such evidence, under the general accounting, for the rents, issues and profits of property not sold under the Mulvey mortgage, but used in the laundry business, demanded in the complaint, and under the issue raised in the counterclaim, was proper. Nor under the general character of the pleadings and the evidence did the court err in finding that the plaintiff leased the laundry property to the defendant.

The appellant also insists that the court erred in finding that the defendant, upon payment of the Wooley notes and taking an assignment of them to himself, became the owner and holder thereof, and was subrogated to the rights of the payee. We are of the opinion that the character of the pleadings and evidence was such as to justify the court in making this finding. Counsel for the appellant, however, maintains that it is doubtful whether the doctrine of conditional sale exists in Utah. We think the validity of such a sale is no longer an open question in this state.

A conditional sale of personal property, it being stipulated in good faith that the title is not to pass until full payment of the purchase price by the vendee, is valid and binds the vendee, his creditors and vendees. There is no general principle of law which prevents an honest intention of the parties, that the vendee shall not have the ownership of the chattels until he has paid for them in full, from being effectual. In the absence of fraud, therefore, such a sale will be upheld and effect given the condition imposed. *Lippincott & Co.* v. *Rich*, 19 Utah, 140; *Hirsch & Co.* v. *Steele*, 10 Utah, 19; *Russell & Co.* v. *Harkness*, 4 Utah, 197; *Harkness* v. *Russell*, 118 U. S. 663.

The conditional sale of the machinery being valid, and the respondent, in order to save the property from being retaken by the vendor, having paid the balance of the purchase price, had the right to have the notes assigned to him. By such payment and assignment he became the owner and holder and was subrogated to the rights of the vendor. ''The vendor may assign his claim to the property sold conditionally, and his assignee acquires the same rights therein as the vendor had, and the vendor in such case loses all his interest in the property.'' 6 Am. & Eng. Ency. Law, (2d ed.) 485; *Foundry Co.* v. *Pascagoula Ice Co.*, 72 Miss. 608; *W. W. Kimball Co.* v. *Mellon*, 80 Wis. 133; *Myres* v. *Yaple*, 60 Mich. 339; *Rodgers* v. *Bachman*, 109 Cal. 552.

Nor did the taking of the contract of April 17, 1894, between the defendant Dole and the Wooleys and the Troy Laundry Machinery Co., wherein Dole for himself assured and guaranteed the payment of the notes, divest the vendor, or its assignee of the right to insist on the terms of the conditional sale. Under that contract, which was made to secure an extension of time for payment of the

debt, the Wooleys were not released. They were still bound by their contract to pay the notes. The contract amounted simply to an additional security and its taking was not a waiver of the rights of the vendor under the contract of sale, and did not destroy those rights or the lien. 6 Am. & Eng. Ency. Law (2d ed.), 477; *Pettyplace* v. *Manufacturing Co.*, 103 Mich. 155; *Cherry* v. *Arthur*, 5 Wash. 787.

Nor did the court commit an error in finding that the contract of April 17, 1894, formed no part of the consideration for the purchase of the 600 shares of the capital stock of the plaintiff corporation, by the respondent from Hunter. There is no provision that Dole became a guarantor in consideration of the purchase of the stock. Hunter, the vendor, was not a party to that contract, and the contract of March 26, 1894, between the respondent and Hunter, shows the real and an entirely different consideration for the stock.

So, under the pleadings and the evidence, the court properly decided in favor of the respondent, as to the several sums paid by him for taxes, and for expenditures in repairs upon the laundry property.

Other points have been presented in the record, and, although they have not escaped our notice, yet we do not deem a discussion of them important. We find no reversible error in the record.

The judgment is affirmed, with costs.

MINER, J. and BASKIN, J. concur.