Spear, J.
We are of opinion that the judgments of the lower courts are right and will endeavor briefly to state the ground for this conclusion.
Prior to the passage of the conditional sales statute of May 4, 1885 (82 Ohio Laws, 238), the title to property so conditionally sold remained absolute in the vendor until the purchase price should be fully paid; and he. might retake the property if any part of the purchase money remained due and unpaid either from the purchaser or any person having possession of it. That act (incorporated in Bates’ Annotated Statutes as Section 4T55-3) provided that it should be unlawful for the vendor or his agent, etc., to take possession of the property without tendering or refunding to the purchaser, or party receiving the same, the sums so paid after deducting a reasonable compensation, not exceeding fifty per cent, of the amount paid, unless the property had been broken or damaged, and in such case a reasonable compensation for such damage to be allowed. It further provided, in a separate section, that any violation should be deemed a misdemeanor punishable by fine. Section 4155-3 was amended March 19, 1902 (95 Ohio Laws, 6a), and reads as follows:
Section 4155-3. ' “(Vendpr of property condi *21 tionally sold may not retake possession without repaying certain part of price paid; exception.)
“Whenever such property, except machinery equipment and supplies for railroads and contractors, and for manufacturing brick, cement and tiling, and for quarrying and mining purposes, is. sold or leased, rented, hired or delivered, it shall be unlawful for the persons who so sold, leased, rented, hired, delivered, or his assigns or the agent or servant of either their agent or servant to take possession of said property, without tendering or .refunding to the purchaser, lessee, renter, or hirer thereof or any party receiving the same from the vendor, the sum or sums of money so paid after deducting therefrom a reasonable compensation for the use of such property, which shall in no case exceed 50 per cent, of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed in such contract or not, unless such property has been broken, or actually damaged, and then a reasonable compensation for such breakage or damages shall be allowed. Provided, that the vendor shall not be required to tender or refund any part of the amount so paid unless said amount so paid to the vendor exceeds 25 per cent, of the contract price of the property.”
The noticeable changes effected by the amendment are the provision that “machinery, equipment and supplies for railroads and contractors, and for manufacturing brick, cement and tiling, and for quarrying and mining purposes,” are excepted from the operation of the statute; also that the words “or his assigns” follow the words descriptive of the vendor in the original section; also that the words *22 “from the vendor” are incorporated as new matter after the words “receiving the samé” in the original section. The proviso with which the section concludes is not of importance in this inquiry.
It does not seem to be contended by counsel for plaintiff in error that under the statute as it existed prior to the amendment the position assumed by him here could be maintained, but it is contended that the changes in the statute above referred to,' and which are given in italics, show that the legislative purpose’was not to change the common law rule to the extent of requiring the vendor to make the refunder specified in the statute where the property had been sold or assigned by the original purchaser to another, but in such case he may retake the property without condition so long as anything remains due on the original purchase. In other words the contention is that the tender of money need only be made, to the original purchaser, if in possession, and need not be made to any subsequent purchaser, although in possession. Counsel invoke the well-known rule of construction that statutes in derogation of the common law are to be strictly construed, and should not be extended beyond the plain import of the words used. This plain import, say the counsel, is that the provisions and benefits of the act should be confined to those interested in the conditional sale, and not to third parties not connected with the original transaction, the purpose being to impose restrictions and confer rights upon the original parties to the sale, and not to create transferable rights to a succession of outside parties.
There is plausibility in these propositi.ons standing alone. But, without' here entering upon a dis *23 cussion as to their soundness, we are of opinion that they lose sight of and override the effect of that rule of the common law, as well established as any other, that in the absence of valid contract obligation or plain statutory provision to the contrary, ownership of property, whether it be absolute or qualified, carries with it the power of disposition, 'and this necessarily implies the acquisition by the purchaser by virtue of the sale of all the rights of the vendor. Otherwise the ownership of property is shorn of one of its most essential and valuable qualities. Effect can not be given to the proposition of counsel without impinging upon, indeed denying, this valuable property right, and the purpose of a statute to accomplish this result should not be presumed unless such purpose is clearly expressed in the statute itself. We look in vain in the language of the section under review as amended for the plain expression of any such purpose. Of course the exception incorporated in the amended section served no other purpose bearing on intent than to indicate that'the general assembly regarded that exception as affording one sufficient reason for some amendment. The same may be said of the proviso. The incorporation of the words “or his assigns” gives no right to the vendor that the common law rule would not afford, and the omission of like words applicable to the' purchaser does not deprive him of any right which the same rule of the common law would bestowj while the words “from the vendor” are at most equivocal and do not appear to be conclusive of an intent to require that the reception of the property referred to should be directly from the vendor rather than through another. Albright v. Meredith, 58 Ohio St., 194, *24 is authority for the proposition that “one in possession of chattel property under a contract of conditional sale, who has paid a part of the purchase money, has acquired an interest in the property which may be mortgaged,” and in the opinion it is held that the “mortgage was good as to all the world save the vendor, and good against it save only when it asserted its right in accordance with law.” The cases of Standard Steam Laundry v. Dole, 61 Pac. Rep., 1103 (Utah); Myres v. Yaple, 60 Mich., 339; Barton v. Groseclose, 81 Pac. Rep., 623 (Idaho); Kimball Company v. Mellon, 80 Wis., 133, and Ross-Mehan Brake Shoe Foundry Company v. Pascagoula Ice Company, 72 Miss., 609, although relating to the rights of the vendor rather than those of the vendee, are consistent with the ruling in the Al-bright case and in reasoning support it, it being held in the last above-cited case that “the reservation of the title is but as.security for the purchase price, and if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser. Being but a security for the payment of money, the benefit thereof, follows the debt when assigned, as an incident thereof.”
In the case at bar, as in the Albright case, a mortgage was executed by the original purchaser, though in this case with possession. It being thus shown that Moore acquired an interest which might be mortgaged, it would follow that, in the absence of a plain provision of statute to the contrary, the mortgagee would acquire the property rights of the mortgagor, and such rights he might sell, which he did in this case. Authorities are abundant, if any are needed, that statutes regulating or restrain *25 ing the disposition of private property are in derogation of common right, and must be construed strictly. 26 Am. & Eng. Ency. of Law, 662, and authorities cited.
In this condition of legislation it will conduce to an understanding of the proper result to consider the general intent and purpose of the statute. This is declared in Speyer & Co. v. Baker, 59 Ohio St., 11, opinion by Williams, J., thus: “Purchasers on this plan are usually persons of small means, and unable to pay except in installments; and such sales are, partly on that account, made at prices in excess of those charged in other cases. Payment of part of the installments may amount to more than the actual worth of the property; and, on account of the unconscionable advantage which the vendor would otherwise have, by taking the property and retaining the money paid, the legislature deemed it proper to adopt the equitable rule of adjustment prescribed by the statute.” The statute referred to is the section as it stood before the amendment of March 19, 1902, and the holding as to the point here in consideration is this: “Where a purchaser at such sale has made payments on the property, he is entitled to its possession, though in default as to other installments, until there shall be refunded or tendered back the amount so paid, less a reasonable compensation for the use of the property and for any damage done to it while in his possession; and the amount which he is so entitled to have refunded should be awarded him as damages when the property is taken in replevin at the suit of the vendor.”
Inasmuch, however, as we have found that the amendment makes no material change respecting the point at issue, we see no reason why the above *26 holding, in connection with the Albright case, does not practically dispose of the controversy in the case at bar. . •
The judgments of the courts below will be

Affirmed.

Price, Crew and Summers, JJ., concur.