RUSSELL & CO., A CORPORATION, RESPONDENT, v. H. O. HARKNESS, APPELLANT.

AFFIRMED: 118 U. S., 663.

CONDITIONAL SALE.—The plaintiff delivered to P. and F. certain machinery upon the conditions that the title thereto should remain in the plaintiff until certain notes, taken for the purchase price thereof, were paid and on such payment should rest in P. and F., that the plaintiff could take possession of the machinery on default in the payment of any note or when it deemed itself insecure; could sell the same and credit the proceeds on the notes and hold P. and F. for the residue. P. and F. sold and delivered the machinery to defendant and then failed to pay one of the notes; the contract between plaintiff and P. and F. lacked the statutory requisites of a chattel mortgage; held that the transaction between plaintiff and P. and F. was a conditional sale and that the plaintiff was entitled to the property as against the defendant.

APPEAL from a judgment of the district court of the first district. The opinion states the facts.

*Messrs. Kimball & Heywood,* for the appellant.

Construing the whole contract and notes together, they amount to a sale with a lien reserved to respondent. In Illinois, under a statute similar to that of Idaho, (Jones on chattel mortgages, section 202), the supreme court of that state have construed like contracts: *McCormick* v. *Hadden,* 37 Ill., 447: *Ketchum* v. *Watson,* 24 Ill., 591; *Murch* v. *Wright,* 46 Ill., 488; *Lucas* v. *Campbell,* 88 Ill., 447; and arrived at this conclusion.

To the same effect are: *Hearvey, et al.,* v. *R. I. Locomotive Works,* 93 U. S., 664; *Heryford* v. *Davis,* 102 U. S., 235.

The case at bar falls fully within the reasoning of the court in the foregoing cases. The form of the contract cannot vary its effect.

The property being sold in Idaho, and remaining there until sold to appellant, its transfer is regulated by the laws of that territory, notwithstanding the respondent was a resident of, and the contract appears to have been made, in another jurisdiction: *Green* v. *Van Buskirk*, 5 Wall., 307; *Same* v. *Same*, 7 Wall., 139; *Hervey et al.*, v. *R. I. Locomotive Works*, 93 U. S. 664.

The contract of sale was not proved or recorded in compliance with the law of Idaho. The purchasers being in possession of the property on December 22d, 1882, and then selling it to appellant, he acquired a valid title against respondent.

Under statutes like that of Idaho, making unrecorded mortgages void against persons, other than the parties to them, such mortgages have no validity against subsequent purchasers and mortgagees, although they have actual notice of the prior mortgage: Jones on Chattel Mortgages, sec. 314; *Bingham* v. *Jordan*, 1 Allen, 373; *Travis* v. *Bishop*, 13 Met., 304; *Gasiner* v. *Patterson*, 23 Cal., 299; *Donaldson* v. *Johnson*, 2 Chand. (Wis.), 160; *Garland* v. *Plummer*, 72 Me., 397; *Wilson* v. *Milligan*, 75 Mo., 41; *Kennedy* v. *Shaw, et al.*, 38 Ind. 474; *Matlock* v. *Straughn*, 21 Ind., 128; *Sage* v. *Browning*, 51 Ill., 217; *Frank* v. *Miner*, 50 Ill., 444; *Dowell* v. *Stewart*, 83 Ill., 538; *Lemen* v. *Robinson*, 59 Ill., 115.

*Messrs. Bennett, Harkness & Kirkpatrick*, for the respondent.

That a conditional sale of personal property by which the title is not to pass until full payment by the conditional vendee is good against him and his creditors and vendees is held in nearly every state and territory in which the subject has been considered: *Brown* v. *Haynes*, 52 Maine, 578; *Rogers* v. *Whitehouse*, 71 do., 222; *Kimball* v. *Jackson*, 42 N. H., 242; *Fisk* v. *Ewen*, 46 N. H., 173; *Armington* v. *Houston*, 38 Vt., 448; *Coggill* v. *Hartford & M. H. Ry. Co.*, 3 Gray, 545; *Burbank* v. *Crocker*,

7 Gray, 158; *Goodell* v. *Fairbrother*, 12 R. I., 233; *Cragin* v. *Coe*, 29 Conn., 51; *Hughes* v. *Kelly*, 40 Conn., 148; *Brown* v. *Fitch*, 43 Conn., 512; *Hine* v. *Roberts*, 48 Conn., 267; *Ballard* v. *Burgett*, 40 N. Y., 314; *Austin* v. *Dye*, 46 do., 500; *Cole* v. *Mann*, 62 do., 1; *Parmlee* v. *Catherwood*, 36 Mo., 479; *Griffin* v. *Pugh*, 44 do., 326; *Ridgway* v. *Kennedy*, 52 do., 24; *Hall* v. *Draper*, 20 Kansas, 137; *Cole* v. *Berry*, 13 Vroom, (N. J.,) 308; *Couse* v. *Fregent*, 11 Mich., 65; *Whitney* v. *McConnell*, 29 do., 14; *Knowlton* v. *Redenbaugh*, 40 Iowa, 114; *Sumner* v. *Woods*, 67 Ala., 139; (Reported 42 Am. Rep. 104); *Hunter* v. *Warner*, 1 Wis., 141; *Pitts* v. *Owen*, 9 do., 152; *Kohler* v. *Hayes*, 41 Cal., 455; *Cardinal* v. *Edwards*, 5 Nev., 36; *Singer Manf. Co.*, v. *Graham*, 8 Or., 17; *Call* v. *Seymour*, 40 Ohio St., 670; *Bradshaw* v. *Warner*, 54 Ind., 58; *Hodson* v. *Warner*, 60 do., 214; *McGinn* v. *Sell*, 60 do., 249; Benjamin on Sales, 3d. Ed. sec. 320 and note.

It is said by the annotator of the case of *Lewis* v. *McCabe*, 21 Am. Law Reg., 217, that there are no decisions in North Carolina, South Carolina, Georgia, Mississippi, Tennessee and Delaware, but probably this may arise partly from the statute system in some of those states of taking liens for advances on crops and farm implements, stock and products.

In Illinois, since quite an early day, these contracts were held invalid against creditors and purchasers from the conditional vendee.

Cases cited in appellant's brief.

In Pennsylvania the decisions have not been uniform and some fine distinctions have been drawn, but the latest decisions seem to agree with the Illinois cases. In Kentucky the law is said to be the same. With these exceptions the courts of every state in which the subject has been considered have held conditional sales valid, and the elementary writers so announce the law.

ZANE, C. J.:

It appears from the findings of the district court, that on the second day of October, 1882, the plaintiff entered

into the following contract with Phelan & Ferguson: "On or before the first day of May, 1883, for value received in one sixteen-horse power engine and boiler, number one thousand twenty-six hundred, and a portable saw mill, complete, number one hundred and twenty-seven, bought of L. B. Mattison, agent of Russell & Co., we, or either of us, promise to pay to the order of Russell & Co., Massilon, Ohio, three hundred dollars, payable at Wells, Fargo & Co.'s bank, Salt Lake City, Utah Territory, with ten per cent. interest per annum from October 1, 1882, until paid, and reasonable attorney's fees, or any costs that may be paid or incurred in any action or proceeding instituted for the collection of this note, or enforcement of this covenant. The express condition of this transaction is such, that the ownership or possession of said engine, boiler and saw mill does not pass from the said Russell & Co., until this note and interest shall have been paid in full, and the said Russell & Co., or their agents, have full power to declare this note due and take possession of said engine, boiler and saw mill when they may deem themselves insecure, even before the maturity of this note; and it is further agreed by the makers hereof, that if said note is not paid at maturity, that the interest shall be two per cent. per month from maturity hereof till paid, both before and after judgment, if any should be rendered. In case said engine, boiler and saw mill shall be taken back, Russell & Co., may sell the same at public or private sale, without notice, and apply the proceeds on the note, or they may, without sale, endorse the true value of the property on this note, and we agree to pay on the note any balance due thereon after such endorsement, as damages and rental of said machinery; as to this debt, we waive the right to exempt, or claim as exemption, any property, real or personal we now own, or may hereafter acquire, by virtue of any homestead or exemption law, state or federal, now in force, or that may hereafter be enacted."

The court also found that plaintiffs were, at the time of the contract, the owners of the engine, boiler and saw mill described above, and another engine, boiler and saw mill, all described in the complaint, and that they were of the

agreed value of four thousand nine hundred and eighty-eight dollars at the date of the contract, a small portion of which was paid in cash; that Phelan & Ferguson gave seven notes for the remainder due on the first days of May, August and November, 1883, and the first days of May, August and November, 1884, and February, 1, 1885; that each of the notes were in the same form as the above, differing only in amount, date of maturity, and in description of the property; that Phelan & Ferguson took possession of the property in Idaho, where it was at the date of the contract, and remained in possession until the second day of December, 1882, and then sold and delivered the same to the defendant, in part payment of an indebtedness due him and one Langsdorf. The court also found that defendant knew at the time he received the property that it had not been paid for by Phelan & Ferguson, and that plaintiff claimed title thereto; that Phelan & Ferguson were, at the date of their contract, residents of Idaho; that the value of the property on the second day of December, 1882, was one thousand six hundred dollars, and that nothing had been paid on the notes. It also appears that there was a chattel mortgage act in Idaho, which, among other things, provided that chattel mortgages should not be valid, except between the parties, unless made, executed and recorded in conformity with that act, and that no such mortgage was executed to the plaintiff.

The defendant insists that the terms and conditions of the contract manifest an intention to create a secret lien on the property, and should be construed to be a chattel mortgage, and invalid because not executed and recorded according to the Idaho statute. The plaintiff claims that the intention was, as shown by the contract, that plaintiff should retain the title unless payment should be made according to the terms of the notes, and that the purchaser should have a right to the possession and use of the property until the seller should feel insecure, or until default in payments.

The intention of the parties, as expressed in the contract, evidently was to give to the purchaser the possession and use of the property until the seller should feel insecure

for reasonable cause; or until payment according to the notes. In the latter case, the purchaser was to have the title also, and in case of default in payment the right to have the proceeds of the sale, or the value of the property, credited on the notes; and the seller was to have the price with interest according to the notes, and for security the title with the possession of the property, if he felt insecure for reasonable cause, and the further right to sell the property, and to credit either the proceeds or the value of the property without sale, and also the right to collect the difference, and retain the same as damages, in case the proceeds should be less than the amount due.

By this contract the vendor expressly retained the title to the property. This right cannot be likened to a lien. A lien is a claim which one person has on the property of another, as a security for some debt or charge: "it is not, in strictness, either a *jus in re* or a *jus ad rem;* that is, it is not a property in the thing itself, nor does it constitute a right of action for the thing; it more properly constitutes a charge upon the thing." Nor can it be construed as a mortgage. A mortgage is made by the person having the property or title, to another for security: *Herford* v, *Davis*, 102 U. S., 235, cited by defendant's counsel, was a sale of certain cars to a railway company in Missouri. The contract, in some respects, is like the one in hand: in others, not: The parties to it characterized the transaction as a loan of cars for hire, when it clearly was not. The notes executed were all due within four months. This contract gave a much longer time. In that case, collateral security in bonds to a larger amount than the notes secured was taken, and in the receipt given the seller acknowledged that he received the bonds as collateral security for the notes given in payment for the property. In this no collaterals were taken. And by the contract in the case cited the proceeds of the sale, in case they exceeded the notes, were to be paid to the purchaser. In this the vendor retained such surplus as damages. In the case cited, the court held that the contract passed the title to the purchaser; that it did not amount to a lease or a conditional sale, and that it was invalid as a mortgage: *Hervey et al.*

v. *Rhode Island Locomotive Works*, 93 U. S., 664; a
case taken up from Illinois, involved the construction of a
contract similar to that in the case of *Herford* v. *Davis*,
*supra.* This contract also professed to be a lease, but the
court held that it clearly was not, but did not determine
whether it was a conditional or an absolute sale. The court
followed the decisions of the courts of Illinois in construing the chattel mortgage act of that state, and held the contract invalid as to the third parties obtaining interests in
property under the purchaser. The contract in the case of
*Call* v. *Seymour*, 40 Ohio St., 670, is more analogous to
the contract in hand, except that it did not give the vendor
authority to credit the value of the property on the notes
without a sale, or to collect as damages the difference, if
any, between the proceeds or value of the property and
the amount of the notes. The court held that the contract
constituted a conditional sale, and was binding upon the
vendee and all persons acquiring an interest in the property under him.

Russell & Co. were the owners of the property with respect to which this contention has arisen. They sold upon
condition that they were to retain the title unless the consideration should be paid at the times agreed upon, and
the possession was given to the purchaser. It differs from
a contract in which the parties agree that the creditor shall
take the title as security, the debtor retaining the possession. The possession remains the same. Possession and
its change involve actions and are accompanied with circumstances which do not attend the mere change of title
and ownership without possession. The presumption of
ownership from former possession and title is added to
the presumption from present possession, and therefore
more likely to mislead persons wishing to deal with the
vendee with respect to the property. The change of possession is more likely to be known to third parties than the
mere change of title. Nor is the contract now in question
like one in which a stock of goods is sold to a merchant for
retail, the seller retaining the title and giving possession
to the purchaser. Retailing the goods is an indication of
ownership in addition to that of possessing. Nor is this

contract like one by which property which is consumed in its use (as provisions) is sold on the condition that the title. shall pass upon payment. Possession is indicated by acts incident to it, and consumption by those incident to it. The rights of consumption and the right of possession each indicate ownership, and both are of more weight than either.

Courts have sustained contracts belonging to each of these three classes. They have held that the purchaser of the debtor, as well as the debtor himself, is bound when the latter, by agreement, in good faith puts the title to his property in his creditor as security; and that the possession in the case named with the mere right to sell at retail cannot, as against his vendee, pass the title in any other way. That the right to consume in the case named gives no authority to dispose of by sale. That the right of the purchaser of the vendee, the consumer in such case, is subject to the right of the person holding the title according to the first contract.

The courts of Illinois and some other states, hold that conditional sales of the class involved in this case are invalid as against creditors and purchasers of the conditional vendee. The purpose of the rule is to prevent fraud. The argument against such sales is, that possession of personal property is evidence of ownership, and to intrust persons with that evidence without the title, gives them the means of defrauding and imposing upon others. This argument may also be made against loans, bailments and leases of personal property. But it has been uniformly held that the purchaser of the borrower, the bailee or lessee, takes subject to the rights of the vendor, or the bailor, or the lessor.

In considering this contract, we may refer to some general principles. Every person competent to contract is presumed to know that possession alone is not sufficient to confer title as against the owner, and if the purchaser relies upon it without inquiry, he does it at his peril. The law construes contracts according to the intention of the parties, and allows them to contract with whomsoever, and upon whatever terms they may desire. A man should

have a remedy according to his agreement, and should not be held to have trusted where he never intended to trust. The logic of these principles clearly sustains the rights of the conditional vendor against those of the purchaser of his vendee.

In an early case in Massachusetts, *Coggill* v. *Hartford & N. H. R. R. Co.*, 3 Gray, 545, Bigelow, J., said: "The vendee in such cases, having no right to the property, can pass none to others. He has only a bare right of possession, and those who claim under him, either as creditors or purchasers, can acquire no higher or better title; such is the necessary rule of carrying into effect the intention of the parties to a conditional sale and delivery. There is no good reason or equity in placing the burden of a fraudulent sale by a vendee in violation of the condition on which he received the property upon a *bona fide* vendor, rather than upon a *bona fide* purchaser. On the contrary, if either is to lose by his fraudulent act, it should be the latter, who has dealt with a party having no authority, instead of the former, who relies upon a valid subsisting contract as the foundation of his claim. It is the duty of the purchaser to inquire and see that his vendor has a good title to the property which he undertakes to sell."

From the terms and conditions of the contract between the plaintiff and Phelan & Ferguson, we are of the opinion that their intention was that the title to the engines, boilers and saw mills, should not pass to the latter until the price agreed upon should be paid by them according to the notes given. And we hold that plaintiff's title must prevail over the claim of the defendant. These conclusions, we think, are supported by reason, and stand upon principle. They appear to be in harmony with the weight of authority: *Brown* v. *Haynes*, 52 Maine, 578; *Rogers* v. *Whitehouse*, 71 Maine, 222; *Kimball* v. *Jackson*, 42 N. H., 242; *Fish* v. *Ewen*, 46 N. H., 173; *Armington* v. *Houston*, 38 Vt., 448; *Coggill* v. *Hartford & N. H. R. R. Co.*, 3 Gray, 545; *Burbank* v. *Crocker*, 7 Gray, 158; *Goodell* v. *Fairbrother*, 12 R. I., 233; *Cragin* v. *Coe*, 29 Conn., 51; *Heine* v. *Roberts*, 48 Conn., 267; *Ballard* v. *Burgett*, 40 N. Y., 314; *Cole* v. *Mann*, 62 N. Y., 1;

*Parmlee* v. *Catherwood*, 36 Mo., 479; *Ridgway* v. *Kennedy*, id., 24; *Hall* v. *Draper*, 20 Kansas, 137; *Cole* v. *Berry*, 13 Vroom (N. J.), 308; *Coure* v. *Frequest*, 11 Mich., 65; *Whitney* v. *McConnell*, 29 id., 14; *Knowlton* v. *Redinbaugh*, 40 Iowa, 114; *Sumner* v. *Woods*, 67 Ala., 139; *Hunter* v. *Warner*, 1 Wis., 141: *Pitts* v. *Owen*, 9, id., 152; *Robler* v. *Hayes*, 41 Cal., 455; *Cardinal* v. *Edwards*, 5 Nev., 36; *Singer Manf. Co.* v. *Graham*, 8 Or., 17; *Call* v. *Seymour*, Ohio St., 670; *Bradshaw* v. *Warner*, 54 Ind., 58; *McGinn* v. *Sell*, 60 id., 249; Benjamin on Sales, 4th Am. ed., vol., secs. 309, 437, 439, 442, 443.

The judgment of the district court is affirmed.

EMERSON, J., and TWISS, J., concurred.