ENCINO STATE BANK v. TENORIO et al.

### SYLLABUS BY THE COURT

(1)    Title to animals held under a partido contract does not pass to the person in possession, but remains in the original owner.                                              P. 76

(2)    A mortgage made by one in possession of animals under a partido contract from the owner is void as against the owner.                                                      P. 76

(3)    The owner of animals so held is not estopped from asserting his title by reason of allowing them to remain in the possession of the mortgagor, and marked with earmarks or brands recorded in the name of the mortgagor, in the absence of proof that the owner knew of such recording, and that the mortgagee relied upon it in taking the mortgage.                                                          P. 77

(4)    The record of a brand or earmark is not constructive notice of its ownership.                              P. 79

(5)    Neither Sections 41 or 42, Code 1915, nor Chapter 74, Laws 1917, requires the recording of partido contracts.
                                                          P. 80

(6)    Where a foreclosure suit and an action in replevin are joined in one proceeding without objection, it will be treated as though two separate proceedings were filed.
                                                          P: 82

(7)    Petitions in intervention may not properly be filed after judgment between the original parties, but an opposite party, who demurs to them on other grounds and then answers to the merits, without raising that objection, may not raise it for the first time after the trial has commenced.
                                                          P. 84

(8)    Where the court instructed the jury that it could include as damages either the use value of the property during the period of its detention, or interest upon its value at the time taken, and the amount awarded by the jury is substantially equivalent to the interest, the verdict will be sustained                                                P. 87

Appeal from District Court, Torrance County; Ed Mechem, Judge.

Action by the Encino State Bank against Nicolas Tenorio and another, in which Ortiz and others intervened. Judgment for the intervenors, and the plaintiff appeals. Affirmed.

W. P. Harris, of Vaughn and Renehan & Gilbert, of Santa Fé, for appellant.

The court was without jurisdiction of each of the interventions and should have dismissed the same, because no statute authorized them in this case, and the remedy was by cross-replevin or conversion.

Sec. 4339, 4296, 4342, Code 1915.

None of the intervenors, Ortiz, Gonzales, or Mendoza, could come into the suit by way of any intervention statute, and the court was without jurisdiction of the interventions.

Our older intervention statute, Cod. 4296 et seq., came from the civil and not the common law. This is true of it because true of its parent, which the Supreme Court of the United States traces back to Louisana, for each of them had no interest in the matter in litigation. ''The interest which entitles a party to intervene must be a direct interest, by which the intervening party is to obtain immediate gain or suffer loss by the judgment which may be rendered between the original parties.'' (Smith v. Gill, 144 U S., L. Ed. 524; 20 R. C. L. Sec. 23, pp. 684 et seq. n. 15 and 17).

The intervenors' conduct was remiss, in the nature of laches, for judgment had been given against the defendant and sale ordered and made, without objection or appeal therefrom. This particularly affects the Ortizes.

Assuming, although the record questioned it, that the Ortizes filed their intervention so-called on September 20, 1919, the main case went to judgment

and order of sale of the chattel security and that sale was made, in conformity with the judgment, November 4, 1919. Subsequent to that date they filed so-called amended interventions, disregarding the judgment rolls, which disclosed the judgment against Tenorio and the order of sale of the animals. They were satisfied with their prayer for money damages in the alternative, and did not care what was the state of the record.

As the intervention is purely statutory, the purpose of the statute cannot be enlarged so as to give the claimants any other right than claim for the specific property, under the younger statute, and under the older there was no right of intervention at all, for if this ever did get a right of intervention in a replevin suit it was superseded by the newer law having relation to replevin actions, if the seizure of the animals can be said to be in replevin.

Whatever may be said of the Ortiz intervention those of Gonzales and Mendoza were too late.

It has been shown that when these interventions were filed, judgment against the defendant had been given, order of sale of the property made and the property sold, four and five months previous to these interventions respectively. The intervenors alleged and gave testimony to the effect that Jose Ortiz y Pino had been appointed their respective agent at and about August 8, 1919, and thereafter so continued, in respect to these animals. This statement relates to Juan Ortiz also. They were too late. (Smith v. Gale, 144 U S., L. Ed., 521).

By the general intervention statute, Cod. 4296 et seq., "The court shall determine upon the intervention at the same time that the action is decided, and the intervenor shall have no right to delay."

These persons at the time they thus attempted to intervene knew that the case had terminated, so that the intervention could not be determined at the same time that the action was decided.

But there could be no intervention, under this statute, "after the trial commenced," (Cod. Sec. 4296) 20 R. C. L., Sec. 27, p. 688 et seq., and ca. ci.

If reliance is placed upon the statute for intervention in replevin actions, (Sec. 3242 Cod ), the same rule applies by specific adoption, "as in other suits of intervention," probably meaning in other suits by intervention.

Brands and earmarks are evidence of ownership, when recorded.

This is the State statute. (Cod. Secs. 118, 116). 3 C. J. 41, et seq.; Morrow v. State 22 Tex. App. 239; Chaves v. Terr. 6 N M. 457; Partido contracts must be recorded to be valid as to third persons and the holding of this court to the contrary in Page v. Jones, 190 Pac. 541, is wrong in principle and an invitation to fraud in practice, as in the case at bar. Secs. 41 and 42, Code 1915; 25 R. C. L. 767; Koch v. Buoges, 45 Miss. 247.

Unless the statute is interpreted to mean that partido contracts shall be filed so as "to be notice to every one that the person or persons in charge of such animals, sheep, cattle or horses, had no right to sell or dispose of the same in any manner" then it is a useless formality. It has no purpose. Why should the owner of sheep given on shares go to the trouble and expense of filing his contract so as to give notice to the world that the **bartidario** has no right to sell, if he is just as well protected without such record. This is a **reductio ad absurdum**, against which there is the primary rule of statutory construction.

These partido contracts are not chattel mortgages, but are more in the nature of contracts of agistment, and do not come under the law relating to the filing of chattel mortgages, Ch. 71, Laws of 1915, or the amendment of that law, Ch. 74, Laws 1917, unless as commonly designated these agreements constitute leases of personal property  They approach very near

the character of this last form of understanding, if, in fact, they are not strictly within it. If they are leases, and said Ch. 74 is constitutional in respect to them, they should have been recorded, and not being recorded or filed they were void "as to subsequent mortgages in good faith."

It will not be denied that the terms of the statute may be departed from, but where the contract is silent, the statute is read into it, and hence the animals and their product at all times remain the property of the owners. If the contract requires the return of the same property or their progeny or both at the end of the term, it is a bailment. But if an equal number of like kind and quality is to be redelivered, it is a contract of sale. (Woodward v. Edwards, 20 Utah, 118; Bank v. Peterson, 30 Utah, 417, 86 Pac., 414, 116 Am. St. Rep. 862; Robinson v. Haas, 40 Cal., 474; Smith v. Niles, 20 Vt., 315, 49 Am. Dec. 782; 3 R. C. L. 73; Edgar v. Parsell, 151 N. W. (Mich.) 714); Elliott on Contracts, Sec. 3007; Sturm v. Baker, 150 U. S., 312; Wilson v. Finney, 13 Johns. 358; 3 R. C. L. Bailments, Secs. 3 and 4; Supply Co. v. Missouri etc. Co. 148 S. W. 995.

When, by the terms of the contract under which property is delivered by the owner to another, the latter is under no obligation to return the specific property, either in its identical form, or in some other form in which its identity may be traced, but is authorized to substitute something else in its place, either money or some other equivalent, the transaction is not a bailment, but is a sale or exchange. (Austin v. Seligman, 18 Fed., 519; Powder Co. v. Burkhardt, 97 U. S. 111, 6 C. J., p. 1086, Sec. 4; Wilson v. Finney, 13 Johns., 358).

As to the other contracts, it is plain that, notwithstanding the language, when construed in the light of the facts, there could not be a redelivery of the same property, at the time the interventions were filed. The lapse of time created an impossibility. The inter-

venors knew this when they pursued their interventions.

Sturm v. Baker, 150 U. S., 312; Supply Co. v. Missouri etc. Co. 148 S. W. 995; United States v. Thonas, 15 Wall., 337; Young v. Leary, 135 N. Y. 569; Seevers v. Gabel, 27 L. R. A., 733.

The destruction of a chattel bailed without the fault of the bailee, discharges him from liability to redeliver the same. (Stewart v. Stone, 127 N. Y., 500, 14 L R. A. 115, 28 N. E., 595; Romero v. Newman, 23 So., 493; Pinkham v. Libbey, 49 L. R. A., 693; Walker v. Tucker, 70 Ill., 527.

There is no conversion until refusal to comply with demand for the animals claimed. The intervenors, if entitled to recover, were entitled to damages proportioned to the value of the cows and their calves at the time of conversion. The damages could not properly exceed the value of the property at that date. (Arkansas Cattle Company v. Nann, 130 U. S. 79).

Where the property is domestic animals **valuable for service only,** the value of the use of the animals is, of course, the measure of compensation; but where, as in this case, the article is intended for consumption, interest upon the value of it would seem to be the true compensation; * * * The best estimate of the loss that can be made is interest upon the amount of money which he would for that purpose be compelled to pay out. The same rule ought to control the ascertainment of damages in actions for simple conversion of domestic animals intended for sale and consumption. The intervenors receive adequate compensation when they are allowed damages equal to the value of the property at the time of conversion, with interest, at the established legal rate, from that date. (Arkansas Cattle Company v. Mann, 130 U. S. 79, citing Colorado cases).

In trover or conversion at law, interest is allowed on the amount determined on as the value of such

property from the time of the conversion. (26 R. C. L. p. 1153, Sec. 69). If the conversion is accidentally under the belief of a right to the property, and without wrongful intent, the measure of damages is the value of the property when taken, but if the conversion is willful, and without color or claim of right, the measure is the value of the property at the time and in the condition when demand is made. (26 R. C. L. p. 1155, Sec. 70).

There was no demand upon the sheriff for anybody else made by the intervenors in this case and none pleaded. The intervenors therefore did not state facts sufficient to constitute a cause of action in any event.

Unless the property in suit has a usable value and damage is estimated on that basis, the party prevailing in replevin will be awarded interest on the value of the property during the time of the wrongful detention, as the measure of damages. If the property can not be returned, or the successful party elects to take the money value of the property, or the action proceeds as one for damages only, the measure of damages is the value of the property at the time of the taking with interest from that date, but only to the date of the verdict. (34 Cyc. 1562, 61, 60).

E. R. Wright, E. P. Davies and J. J. Kenney, all of Santa Fé for appellee.

Plaintiff's affidavit in replevin is the complaint. (Abreu v. Brown, 2 N. M. 11) and proviso to Section 4342. Code, applies only where entire action is one of replevin, to contention, but mortgages may foreclose in equity and at same time maintain replevin for possession of the property. 7 Cyc. 80, 81.

Union Trust Co. v. A. T. & S. F. Ry. Co. 8 N. M. 327 and Flourney v. Bullock, 11 N. M. 87 are wrong in principle.

Appellees were entitled to intervene under either Section 4296 or 4342.

Partido Contracts have been recognized in this jurisdiction since the days of the Spaniards. Sections 41 and 42 of the Code are a distinct statutory recognition and sanction for such contracts. This court defined and construed such a contract in the case of Milliken v. Martinez et al., 22 N. M. 66. In the case just cited the court went, at length, into the rights of the owner under such a contract.

In the case of Page v. Jones et al., 190 Pac. 541 this court held that such contracts were valid and binding as against a subsequent mortgage in good faith, under facts on all fours with the case at bar, even though the contract was unrecorded; holding recording not required by Sections 41 and 42, cited supra.

The general rule of the common law is that every man dealing with another in reference to property that other may have in his possession must ''take care,'' **caveat emptor.** The property may be stolen, or borrowed, or pledged, or in the possession of a bailee for some specific purpose, and if so, the party in possession can convey no better or further right than he himself has.

There are some exceptions, as where the property is money, or promissory notes not due, and also cases where the conduct of the true owner is such that he is estopped from setting up his title against an innocent purchaser.

Clearly, however, the mere permission by the true owner to a third party to have possession is not such an act as estops him. Such rule would place it in the power of every bailee to dispose of the thing with which he is intrusted and would seriously interfere with the ordinary affairs of life.

Bank v. Nelson, 95 Amer. Dec. 402; Russell v. Harkness, 7 Pac. (Utah) 865, affirmed in Harkness v. Russell, 118 U. S. 663; Turnbow v. Beckstead, 71 Pac. 1062, (Utah); Coggill v. Hartford, 3 Gray (Mass.) 545; 21 C. J. 1156.

Appellant contends that partido contracts must be recorded to be valid, and asserts this to be true under the provisions of Sections 41 and 42 of the Code. Appellant further contends that the case of Page v. Jones et al, 190 Pac. 541, which expressly construes these two sections as not requiring recordation, is unsound and should be overruled.

Our answer to this contention is to stand squarely upon the rule of **stare** decisis. The point is settled by the case cited.

Appellants' brief on motion for re-hearing:

Under the common law the action of replevin was surely one to try the right to possession of personal property, judgment was limited to an award of that possession, and if the property were lost or destroyed pending the action, the defendant was relegated to a suit for conversion or to a separate action on the replevin bond.

At common law an action in replevin tested only the right of possession of replevied property at the time of the commencement of the action, and provided no method whereby the defendant might have judgment for the value of his property in case the adjudged return thereof could not be had, but left the successful defendant to another action in another form to procure such relief."

23 R. C. L. Sec. 110, p. 938.

To the same effect is the case of Johnson v. Boehme, 66 Kans., 72; 71 Pac., 243; 97 Am. St. Rep., 357, where after laying down the rule the Court continues:

"In our action of replevin the judgment is in the alternative. This was not so in a common law action of replevin."

Citing:

Wilson v. Fuller, 8 Kans, 176.

Again referring to the Kansas statute permitting a judgment in the alternative, the Court says in the Johnson case:

"This is a new remedy given him, and it is well established in such cases that the one on whom such new remedy is conferred may elect which course he will pursue."

To the same effect is:

Morris on Replevin, p. 199.

Such being the rule at common law, it is submitted here that appellant's contention must be correct unless the rule has been specifically changed by statute, and search discloses that it has not been changed.

Appellees' brief on motion for re-hearing:

Plaintiff under statute had right to alternative judgment, Sec. 4350.

### OPINION OF THE COURT

DAVIS, J.   The primary dispute in this case is as to the ownership, or right of possession, of certain sheep and cattle.   There are 111 assignments of error which cover a wide field.   Obviously it is impossible in an opinion of reasonable length to discuss them severally, and no attempt will be made to do so.   We will content ourselves with general statements of the principles by which the decision must be governed, and the assignments controlled.

There is little controversy over the facts.   Appellant, the Encino State Bank, claims that it had a valid mortgage on the animals, executed by the defendant Nicolas Tenorio, foreclosed it, and sold them under the foreclosure decree.   Intervenors claim that the animals belonged to them, that Tenorio had possession, only under partido contracts from them, and that consequently the mortgage is void because of lack of title in Tenorio on which to base it.   The case was tried to a jury, which found the issues for the intervenors.

September 25, 1901, Juan Ortiz and Jose Ortiz y Pino, two of the intervenors, delivered to Tenorio 500 ewes under a written contract by which he agreed to herd and care for them and their increase, to pay a

stipulated rental each year, to mark them with an earmark which was recognized as the property of the Ortizes, and to redeliver the 500 sheep upon the termination of the contract. It was specifically provided that the sheep and their increase should remain the property of the Ortizes, and that Tenorio should have no right to sell, hypothecate, or dispose of them without written consent.

October 6, 1902, intervenor Jose Ortiz y Pino delivered to Tenorio 215 ewes under a contract containing provisions substantially identical with those of the agreement above referred to.

October 4, 1912, the same intervenors delivered to Tenorio 500 additional ewes for which a written contract was executed December 12, 1913, providing that they and their increase should be returned upon demand; Tenorio meanwhile paying a stipulated rental. There was a provision that none of them could be sold or disposed of by Tenorio without written consent.

October 20, 1917, Juan Ortiz delivered 200 ewes to Tenorio under a written contract, dated February 2, 1918, with similar provisions, including those regarding title, as were contained in the agreement of September 25, 1901

October 15, 1916, Jose N. Gonzales delivered to Tenorio 50 ewes and 10 lambs. The contract provided that they were received on shares, that a rental should be paid, that the earmark should belong to Gonzales, and that none of them or their increase should be hypothecated or disposed of by Tenorio without written permission, but that, if he made redelivery of the sheep, any surplus over the number he received should be his. Intervenor Manula Ortiz de Gonzales is the widow of and administratrix of the estate of Jose N. Gonzales.

October 26, 1917, Frank Mendoza delivered to Tenorio 150 ewes, and on November 12, 1917, 70 lambs.

Receipts were signed by Tenorio, acknowledging delivery to him of the animals on "partido," and agreeing to pay rent. Tenorio testified that he received them, and that he was to pay rent and return the total number at the expiration of five years. Luz G. Mendoza, one of the intervenors, is the widow of Frank Mendoza and administratrix of his estate.

The only contract regarding cattle was one between Juan Ortiz and Tenorio, covering delivery of 60 cows on September 15, 1914. It provided that the cattle should be branded with a specified brand, which should be the property of Ortiz; that Tenorio should have no right to sell or hypothecate any of them or their increase without written permission; that they were to be held on shares and a rental paid; and that Ortiz might take them back at any time. None of these contracts was recorded.

[**1, 2**] The mortgage which the appellant bank sought to foreclose, and upon which its rights depend, was given by Tenorio May 29, 1919, to secure the payment of promissory notes of the same date. It covered 200 cows and 1,200 ewes. Under the verdict and judgment it must be assumed that these animals were the identical ones received by Tenorio under the partido agreements already referred to or increase from them. While this mortgage was a renewal of prior mortgages, it is unnecessary to refer to them, for they were subsequent to the delivery of the animals under the partido agreements, and the position of appellant is therefore not improved by relating its rights back to the date of their execution.

It is undisputed that at the time of the making of the partido contracts the animals belonged to the several intervenors by whom they were delivered to Tenorio. Most of the contracts, as already stated in detail, specifically reserved title. No one of them contained words apt to pass title, or from which an intent to give title can be presumed. If these parties have been di-

vested of their original ownership, it must therefore be by some further act of theirs or by operation of some law. No further act on the part of any of them is shown. The statute applicable to their conduct upholds their rights, and has been so construed. Under section 42, Code 1915, title to animals held under such contracts remains in the original owner, although possession is in another. Construing this law, this court said in Milliken v. Martinez, 22 N. M. 61, 159 Pac 952:

"Under this section, it will be observed that, where any sheep, bovine cattle, horses, or other animals are received from the owner, under a written contract for the herding or caring for the same for pay or on share, or in any other manner, except by absolute purchase, such sheep or other animals, together with the increase and product thereof at all times, and until the full completion of such contract according to the terms thereof, shall be and remain the property of the said owners so letting them out to be herded and cared for. Hence, under a 'partido' contract which calls for the return of a like number and kind of animals at the expiration of the contract, the original animals and their increase remain the property of the original owner until the full completion of the contract, and the person having such animals in his charge has no power to sell or dispose of them until after his title thereto has vested, by full completion of the contract according to its terms, or 'by express consent of the owners.'"

This is a correct statement of the law, is directly applicable to this case, and is conclusive of this feature of it.

[3] Appellant contends that these agreements, or at least some of them, cannot be considered as partido contracts, but that the transactions which they represent were really sales under which title passed to Tenorio. The original animals, he says, were not to be returned, but only animals to a like number and of the same quality, and, in any event, the animals then delivered must now be presumed to be dead. He cites authority to the effect that delivery of personal property may pass the title if it is not contemplated that the identical article be returned, but something else is to be furnished in its place. Such authorities are not applicable here. As to the contracts which expressly reserve title

to the stock and increase, the argument is negatived by the contracts themselves. As to those containing no such language, the statute already cited and considered in Milliken v. Martinez supplies the lacking provision, and continues title in the original owner. Under the contracts which ran for an indeterminate period, the sheep to be returned upon demand, the owner could retake them at his pleasure, and at any time, and when he did so he would be only recovering possession of his own property. And the death or loss of the sheep delivered could make no legal difference. If there were increase from them, title to the increase followed the title to the mothers, whether under the express provisions of the contracts, or under the ordinary rules of law or under the statute.

It follows that when Tenorio made his note and mortgage he attempted to pledge property which did not belong to him. Unless appellant can found its claim upon some legal principle which will uphold a mortgage made by a stranger to the title, as against the true owner of the property mortgaged, its case necessarily fails. Appellant attempts to do this in several ways.

It contends that the true owners held out Tenorio as the owner of these animals, and "by misleading and deceptive conduct and behavior led appellant into the ambush, from which it was shot at and mortally wounded," a rhetorical expression of the idea that appellant was misled to its injury, and that intervenors are therefore estopped from setting up their title as against the innocent mortgagee. The court by its instructions submitted this issue to the jury, which determined it adversely to appellant. It now takes the position that the undisputed proof required a different verdict. The principal facts upon which reliance is placed are that intervenors left the animals in the full control of Tenorio, and permitted him to mark them with brands and marks shown on the records to belong to Tenorio, and appellant argues that it could

properly presume him to be the owner, and that intervenors may not now assert their title.

The mere fact that the animals were continuously left in Tenorio's possession did not vest in him indicia of title sufficient to protect one dealing with him as an owner. Such a situation, arising from partido contracts or feeding or pasturage agreements, is common wherever the live stock industry exists. Its propriety is specifically recognized, and the resulting condition protected, by the statute already cited. If possession alone implied ownership, every bailee, agent having possession, or lessee, could convey good title as against his principal. The correct rule is tersely expressed in Russell v. Harkness, 4 Utah, 197, 7 Pac. 865, as follows:

"Every person competent to contract is presumed to know that possession alone is not sufficient to confer title as against the owner, and if the purchaser relies upon it without inquiry, he does it at his peril."

See, also, Roberts v. Lubin, 25 N. M. 658, 187 Pac. 551.

Under the ordinary principles of estoppel, before the use on these animals of brands or earmarks recorded in the name of Tenorio can operate to prevent intervenors from asserting their ownership, it must be shown that they knew of this situation, and that appellant relied upon it in accepting the mortgage.

[4] The statutes do not make the record of the brand on cattle or earmark on sheep constructive notice to any one. The recorded brand or mark is prima facie evidence of ownership of the animals on which it appears, but the record is not constructive notice of ownership of the brand. To state the rule specifically, intervenors in this case were not held to notice that Tenorio had recorded the brand or earmark in his own name. There is no pretense that any of them had actual knowledge that the earmark or brand was so recorded. Nor did appellant, so far as appears from the testimony, in taking its mortgage rely in any degree whatever

upon the recorded brand or earmark as indicia of his ownership. So far as the cattle are concerned, there is nothing to show that appellant even knew that the brand was recorded; and as to the sheep, the only testimony was that one of its officers wrote the Sheep Sanitary Board in December, 1918, about the earmark of Tenorio, and received a reply, but what the reply was, or what information was obtained, does not appear. Whether or not an estoppel might arise against an owner who knowingly allows a bailee improperly to use a brand recorded in the name of the bailee, in favor of a third person who deals in reliance upon the apparent ownership and is misled to his injury, any such contention by appellant in this case is entirely precluded by a lack of facts on which to base it.

Appellant contends that the contracts should have been recorded, and argues that it had no notice of them. If, under its mortgage made by one having no title, it has acquired a right in the mortgaged property superior to that of the intervenors who are the true owners, because of their failure to record their contracts, it must be by virtue of some statute which gives that effect to such failure.

[5] Appellant first relies upon sections 41 and 42, Code 1915, as having that effect. It argues that the case of Page v. Jones, 26 N. M. 195, 190 Pac. 541, 10 A. L. R. 761, which construed these sections contrary to its contention, should be overruled. There it is held that under this law recording is permissive, not mandatory, and that failure to record has no effect upon the rights of the parties to the contract, nor does it render the contract void as against subsequent purchasers or mortgagees without notice. It is unnecessary to repeat the reasoning by which that conclusion was reached. We adhere to both the reasoning and the determination of that decision. These statutes do not have the effect for which appellant contends.

The other statute relied upon as requiring the recording of such contracts is chapter 74, of the Laws of 1917, which reads as follows:

"Sec. 2. That hereafter all chattel mortgages, conditional sales, leases, purchase-leases, sale-leases, or other instruments of writing having the effect of a mortgage or lien upon personal property, or that are intended to hold the title in the former owner, possessor or grantor until the value or purchase price is fully paid, shall be acknowledged by the owner or mortgagor in the same manner as conveyances affecting real estate, and the same shall be filed or recorded as hereinafter required. The failure to so file or record any such instrument in writing shall render the same void as to subsequent mortgages in good faith, purchasers for value without notice, and subsequent judgment or attaching creditors without notice; and as against subsequent general creditors without notice, such unrecorded instrument shall not be valid until the same shall be duly filed or recorded as hereinafter provided."

The contracts here in question certainly are not chattel mortgages nor conditional sales. The legal relation created is more nearly that of bailment. The only word in the statute which is possibly broad enough to include them is "lease." Partido contracts have been common in New Mexico since the raising of live stock became an industry of importance, and have been universally designated by that title. If the Legislature intended this statute to apply to instruments in such general use, we may presume that it would have included them specifically under their common designation. That there was no intention to include them is shown by the language—

"or other instruments of writing having the effect of a mortgage or lien upon personal property or that are intended to hold the title in the former owner, possessor or grantor until the value or purchase price is fully paid."

The statute must be construed as a whole, and the words quoted characterize the class of "lease" to which it is applicable. Partido contracts do not have the effect of a mortgage or lien nor reserve title pending the payment of the purchase price. Under them title does not pass, nor is it intended that it ever shall pass, except to the surplus animals, if any, remaining

after the agreement has been performed by redelivery upon its expiration. The recording acts therefore have no application to the situation presented here, and the rights of appellant did not become superior to the title of intervenors because of failure to record the contracts.

The foregoing disposes of the fundamental merits of the controversy. Evidently the decision of the case was in accordance with the underlying rights of the parties. There remain for consideration matters of practice and procedure which go to whether the verdict and judgment were rendered in accordance with legal rules. Appellant raises a multitude of objections of this character.

[6] Irregularities and procedural anomalies appear at the very inception of this case, and continue through most of its course. Appellant claims to have commenced the suit with the primary purpose of foreclosing its mortgage. But coupled with its complaint in foreclosure and attached to it, appellant filed an affidavit in replevin and a replevin bond, both in the statutory form provided for replevin actions, and obtained the issue of a writ of replevin to recover the mortgaged property. This writ was issued, served upon Tenorio, sheep and cattle were seized under it, and they were delivered to appellant. The writ directed the sheriff to summon Tenorio to appear and ''answer to the action of the plaintiff. Damages claimed $9,444.35, with interest and cost of suit.'' No other process was issued, and this writ contained no reference to the foreclosure feature of the proceeding. The writ was served September 5, 1919. Tenorio defaulted. November 4, 1919, judgment was rendered against him, and filed November 10th. It adjudged that the affidavit and writ of replevin be ''approved,'' and appellant's possession of the property under the writ ''confirmed,'' that the mortgage be foreclosed, and Tenorio ''barred of all right, title, or interest'' in the property described, and ''forever enjoined from claiming'' any right in it,

and that appellant should sell the property replevied "at public or private sale." The judgment contains no provision as to time, manner of sale, notice to be given, or report to the court. Apparently it was an attempt to dispose of both the foreclosure and the replevin features of the proceeding.

November 4th, on the same day as the signing of the judgment and six days prior to its filing, appellant sold the cattle and sheep at a public sale, of which it gave notices by the posting of handbills. There was no compliance with the provisions of section 2195, Code 1915, which governs such sales, no notice was published, and no report made to the court.

Whatever the primary purpose of the proceeding may have been, the only real benefit obtained by appellant was the recovery of the property under the replevin writ. The foreclosure decree certainly gave no validity to the sale that would not have existed without it.

The combination in one proceeding of a suit to foreclose a mortgage and an action in replevin is, so far as we are aware, without precedent. From such a miscegenation peculiar progeny might well be expected, and the expectation is realized. But the confusion was caused by appellant itself. No other party contributed to it. It is useless for it to argue now that the suit was wholly one to foreclose the mortgage, and that the possessory features were merely ancillary, and should not be called replevin proceedings, but considered as some sort of an equitable remedy in aid of the foreclosure. They do not conform to any equitable writ of which we are aware. They are strictly according to the statutory action in replevin, were so intended by appellant and treated by the court, and under them appellant obtained possession of the property. We will therefore consider the situation as though it arose under two separate cases, distinctly styled and numbered, one in foreclosure and one in replevin; that being the

obvious manner in which the matters should have been presented, and as though the intervention petitions were filed in the replevin actions.

Appellant contends that at the time the various interventions were filed no right to intervene existed, either because of lack of statutory authority or because the case was not then pending.

The statute applicable to interventions in actions in replevin is section 4342, Code 1915, reading in part as follows:

"That in any action of replevin, any third person claiming any interest in property replevied or the right to the posession of the same may intervene in such suit as in other suits of intervention."

The general statute, applicable at least to interventions in actions at law section 4296:

"Any person who has an interest in the matter in litigation in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the declaration, or by uniting with the defendants in resisting the claim of the plaintiff or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause and before the trial commences."

[7] Interventions of Juan Ortiz and Jose Ortiz y Pino were filed September 20, 1919. On this date the time for Tenorio to appear had not expired, and of course no trial had commenced or could have commenced, and no judgment had been taken. These interventions, were clearly properly filed under the statute. Whether filed with or without leave of court the intervenors became parties entitled to notice of any subsequent proceedings affecting them. That appellant knew of and recognized these interventions is apparent from a stipulation entered into between the parties on October 27th, which includes them as intervenors in the title of the case, so refers to them in its provisions, and is signed by counsel as attorney for

plaintiff and as attorney for the intervenors. The judgment rendered on November 4th without notice to them, and while the petition in intervention stood unattacked and undisposed of, could not affect them.

We are not impressed with the argument of appellant that the amended petitions in intervention filed by these parties on February 7, 1920, came too late because judgment had then been entered and the property sold. Their rights were fixed by the original interventions, and the amended petitions related back to the date they were filed. At that time the property was still in the hands of appellant, recovered by it under the writ of replevin. It cannot be heard now to say that by a subsequent sale, not made in accordance with any law, although supposedly authorized by a judgment improvidently rendered without notice, the rights of these intervenors have been in any way affected. They had a right to a judgment awarding them their property. When appellant disposed of it they necessarily became entitled to recover its value. No advantage can come to appellant from its own wrong.

The situation arising under the interventions of Manuela Ortiz de Gonzales and Luz D. Mendoza is entirely different. The petition of Gonzales was filed March 8, 1920, and that of Mendoza April 13, 1920. These dates were subsequent to the entry of judgment on the main issues between appellant and Tenorio. An intervention in a case disposed of by final judgment, and therefore no longer pending, obviously comes too late. There remains no proceeding in which to intervene. That the judgment may have been improperly entered as to persons then parties cannot help the subsequent intervenors. When they intervened they were compelled to take the case as they found it. No litigation was then pending between appellant and Tenorio. The only matters undisposed of were the interventions of Juan Ortiz and Jose Ortiz y Pino, claiming sheep and cattle, in which the latter intervenors had no interest. If a proper motion had been presented taking advant-

age of this situation, it would have been the duty of the court to strike these interventions from the files.

But appellant filed no such motion. It did move to strike certain paragraphs from each petition, and also demurred to each on the ground that it failed to state a cause of action for various reasons designated, but in neither instance did it raise the question now suggested that they were filed too late because after judgment. The motions to strike and demurrers were overruled, and appellant then answered to the merits. The answers alleged that judgment had been rendered against Tenorio, decreeing foreclosure of the mortgage, awarding appellant the sheep, and authorizing it to sell them all as a matter of affirmative defense to the claims of these intervenors, not as an attack upon the propriety of their interventions. Replies were filed, the case proceeded to trial, a jury was impaneled, and then for the first time appellant called attention to the irregularity in the filing of these interventions after judgment, and moved to strike them for that reason. The court overruled this motion, and the case proceeded to trial and final disposition.

No question of jurisdiction is involved. The court had jurisdiction of the parties to these interventions and of the subject-matter presented by them. If the precise matters stated in them had been alleged in complaints separately styled and numbered, they would have been good causes of action. That would have been the correct procedure. If intervenors had been met with a motion to strike upon the filing of their petitions, it may well be that independent actions would have been commenced. And it may equally well be that appellant intentionally refrained from attacking these interventions, preferring to dispose of all claims to these animals in one proceeding, rather than piecemeal in several actions. Whatever its reasons, by the course which it adopted it waived its right to object that the causes of action were improperly filed as interventions instead of as separate proceedings.

In Douthit v. Nabors et al., 133 Ala. 453, 32 South, 625, an intervening petition was improperly filed. The parties, however, instead of attacking the right to present it pleaded to the merits and proceeded to trial. Before decree, however, a motion to strike the petition was filed. The Supreme Court of Alabama said that the question was raised too late, and used the following language, which is applicable here:

> "The pleading of Frank Nelson, whereby he sought to intervene and be made a party to the pending suit of the personal representatives of French Nabors, deceased, against Charles F. Douthit, is indifferently called a 'petition' and a 'bill' in the case. It is of little moment whether it was the one or the other, since, whether is was a bill or a petition, we shall assume for the purposes of this appeal that Nelson had originally no right to file it in the cause mentioned, and no right to intervene in that cause for any purpose. Yet the parties to that cause had the right and power to waive their objections to his thus coming into the case, to admit and receive him as a party to it, and to litigate the equity set up in his bill, and to have it determined in and as a part of the suit already pending. And this they unquestionably did."

[8] Appellant complains that the judgments against it contains damages based upon the use value of the animals from the date of their seizure to the date of judgment. It argues that such damages would be correctly measured by interest at the legal rate for the same period. The court instructed the jury that it might base damages on either theory. The verdict found the value of the animals in each case, and assessed the damages for their use and detention at a stated sum. Whether the jury based the finding of this amount upon a use value or upon interest is immaterial. After the remittiturs filed by interveners, these sums differ very slightly from the interest to which interveners are admittedly entitled. The amount of the judgment being substantially correct in this respect under appellant's own theory, it cannot be heard to complain of the basis on which it was reached, even if that basis were plain on the record.

Appellant assigns error upon the taxation of costs

against it by the trial court. This was a matter within the discretion of that court, and there is nothing to show that its discretion was abused. Clark v. Apex Gold Mining Co., 13 N. M. 416, 85 Pac. 968.

What has been said disposes of the important errors assigned. The others relate chiefly to the admission or exclusion of testimony. Many of them are left without argument in the brief, and many are extremely general in their language. We have considered all of them and the briefs filed by appellant regarding them, and find no reversible error.

For the reasons above stated, the judgment of the lower court will be affirmed; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.